# DANIEL SULLIVAN *v.* JACKSON BUILDING AND LOAN ASSO-CIATION.

1. USURY. *Building and loan association. Premium for loans.*

   A loan by a building and loan association is not rendered usurious by a premium, which the borrowing member agrees to pay for the loan, since such premium is neither a prepayment of interest nor a deduction of money belonging to the member, but merely represents the agreed discount of the future dividends of his shares of stock.

2. SAME. *Usury. Interest on premium.*

   But, to the extent that the loan contract stipulates for interest on said premium, it is illegal and essentially usurious. So held, where a member bids off a loan of $1,000 at a premium of 40 per cent., receiving in cash $600, but contracts to pay the whole $1,000, with interest thereon at the rate of 8 per cent. per annum.

3. SAME. *Act of 1886. "Money advanced or loaned." Premium.*

   The act of 1886 (Laws, p. 35), excepting building and loan associations from the prohibition against taking more than 10 per cent. interest, does not authorize such associations to charge interest on the premiums stipulated to be paid by its members for loans. They are not "money advanced or loaned," within the meaning of said act.

4. ACCOUNTING. *Building and loan association. Diversion of profits.*

   A bill by a borrowing member against a building and loan association, for an accounting, alleged that the premiums and profits of the series to which he belonged, and to which, under the charter, at the time of this contract, he was ratably entitled, by a vote of the stockholders, from which borrowing members were excluded, had been diverted from that series and applied to the equal benefit of other and subsequent series, and that this action deferred the maturity of complainant's stock, causing him loss. *Held*, error to sustain a demurrer to the bill.

FROM the chancery court of the first district of Hinds county.

HON. H. C. CONN, Chancellor.

Appeal from a decree sustaining a demurrer to a bill. Appellant, Daniel Sullivan, filed a bill against the Building

and Loan Association of Jackson, Miss., seeking relief because of usury, and also praying for an accounting. The allegations of the bill, briefly stated, are as follows:

The appellee was chartered in 1883 as a building and loan association, the powers conferred upon it being those usually belonging to such associations. The charter provided for the issuance of 2,000 shares of stock of $200 each, and the association was to go into liquidation at the end of ten years, or sooner if the stock reached its par value. Its funds were derived from monthly dues paid by share-holders, interest on loans and fines for non-payment of dues. Loans were made, at stated intervals, to the stockholders who would bid the highest premium therefor, the successful bidder securing the privilege of becoming a borrower upon executing a trust-deed on real estate of the requisite value.

The charter provided for its amendment, by a vote of the stockholders, but borrowing members were excluded from voting. In September, 1885, the complainant, Sullivan, subscribed for five shares of stock in the said company, and, since that time, has regularly paid his monthly dues. In May, 1886, at the monthly auction of funds to be loaned, complainant bid off a loan of $1,000 at a premium of forty per cent., and executed his obligation, promising to pay $1,000, and pledging his stock for its payment, the company stipulating that when the stock became of par value the debt should be liquidated. The contract provided for the payment of eight per cent. interest per annum on the entire $1,000, the interest payable monthly. To secure this loan, complainant and his wife executed a trust-deed conveying to the trustees of the association a house and lot in the city of Jackson, the trust-deed containing the usual provisions for sale in case of default. Thereupon complainant received from the association $600, being the face of the loan less the premium of forty per cent. Complainant has paid the monthly installments due upon his stock subscription, amounting, at the time of the filing of the bill, to $395. He

has also paid the installments of interest, as agreed, amounting to $472.86, the aggregate of the two amounts so paid being $867.86.

The bill charges that the stipulation in the contract for the payment of eight per cent. interest on the entire $1,000, whereas only $600 was received, is usurious; that the whole arrangement was a device to cover up usury; that, because of this usury, complainant is entitled to receive back from the association all amounts paid by him to it in excess of $600, and to have his note and trust-deed surrendered and canceled.

The bill further alleges that the affairs of the corporation have been illegally and unfairly conducted; that, by a proper application of premiums and the profits and earnings of the association, complainant's stock would have been already liquidated; that, by an amendment of the charter, additional and successive series of stock had been provided for and sold, and loans made and business done under each series; that, under the charter provisions existing at the time complainant subscribed for the stock and executed said contract and trust-deed, all premiums and earnings derived from the series to which complainant belongs should have been appropriated to the equal benefit of the share-holders in that series, but that by a vote of the stockholders of the association, including the stockholders of subsequent series, all of the earnings from all of the series were commingled and applied to the equal benefit of every series; that premiums had gradually grown less, as successive series were created, until loans in the last series, when sold at auction, brought little or no premium; that this application of the profits of the association, by means of a vote of stockholders, from which complainant was excluded, gradually diminished the earnings which should have been applied to the older series, and thus resulted in postponing the maturity of complainant's stock.

The charter of the association and its amendments were made a part of the bill, and from this it appears that it was originally contemplated that there should be only one series

of stock, but that in May, 1886, after the making of the loan to complainant, the corporation procured an amendment of its charter, which provided for the issuance of successive series of stock to new stockholders, not oftener than once in six months, and that the funds and business of each class should be kept separate, and loaned only to members thereof, and that no stockholders in any class should have rights in another class, and that each class should be wound up separately; that subsequently, in January, 1887, the association again amended its charter by striking out the above-mentioned provision intended to limit stockholders to the profits of the class to which they belonged, and that thus the members of the first and older series would lose the benefits that should accrue to them because of the higher premiums which then prevailed. The bill prayed, in addition to the surrender and cancellation of complainant's trust-deed, that an accounting be had of all payments made by him on any account, and for a personal decree for any balance found to be due him, over and above the $600 received by him.

Defendant demurred, upon the ground that there was no equity on the face of the bill; that the transaction with complainant is not usurious; that the complainant, as a member of the association, acquiesced in the management of its affairs, and has shared in the profits of transactions in all respects similar to this, and is estopped; and, finally, that defendant does not offer to do equity.

The act of March 13, 1886, provided that thereafter no person or corporation, except building and loan associations, should contract for more than ten per cent. interest " for any money advanced or loaned, or any note, account or other evidence of debt."

*E. E. Baldwin,* for appellant.

1. The stipulation for interest on the premium rendered the contract usurious. 45 Md., 546; 58 *Ib.*, 569; 25 Ohio St., 208; 31 *Ib.*, 517; 55 Iowa, 424; 48 *Ib.*, 385; 12 Bush.

(Ky.), 110; 2 Cold. (Tenn.), 418; 12 Rich. Eq. Rep., 124; Endlich on B. & L. Associations, § 398. Courts which hold a contrary doctrine do so under special statutes.

2. The act of 1886 has no application. It had reference to those special acts or charters conferring on banks or other corporations the right to take more than legal interest, and repealed such acts except as to building and loan associations. But § 1141, code 1880, prohibiting usury, remained unrepealed. The charter of appellee was in existence when the act of 1886 was passed, and if it contained any provision to warrant the taking of usury, it was repealed by the second section of the act of 1886.

3. The bill clearly makes out a case for an accounting.

*Nugent & McWillie,* for appellee.

1. The transaction complained of is not usurious. It did not really involve a loan, but a dealing in what may be termed the partnership fund, in view of the joint interest of all the members of the association. Besides, there was in it an element of uncertainty and risk that relieved it of the objection of usury, as in the case of bottomry bonds. 6 Bing. N. C. (Eng.), 180; 6 Allen, 1; 78 Tenn., 677; 19 S. W. Rep. (Ark.), 917; 1 N. Y. Ct. of App., 347; 22 Kan., 624; 26 N. J. Eq., 351; 43 N. H., 194; 46 Ga., 166; 69 Am. Dec., 161, note; Tyler on Usury, 98.

2. The act of 1886 took building and loan associations out of the operation of the laws against usury. The prevalent public policy was manifested at that time, and it has been recognized in the recent revision of our laws. The title of the act stamps it as part of our general law on the subject of usury. The construction of the act contended for by appellant would make it unconstitutional as seeking to repeal charter rights. Such an interpretation is to be avoided. 2 Morawetz on Priv. Corp., §§ 1050, 1056; Sutherland on Stat. Con., § 336. The act is in reality a rude re-enactment of § 1141, code 1880, with a proviso in favor of building and loan associations.

3. Appellant's interpretation of the amendments to the charter is erroneous. It will be seen that the provision requiring the funds and business of each series to be kept separate is still in force. It is not alleged that they have been actually mingled, but that the *effect* of the amendments is to mingle them. As all the members of the first series who wished to borrow had done so, it became necessary to issue new series of stock, in order to increase the number of borrowers and consequent profit, and carry out the primary object of the corporation in enabling all who then were, or might become, members to procure homes. That appellant was excluded from voting on the amendments is no cause of complaint. They were adopted strictly in accordance with the charter, and by members of the same series with complainant. His being debtor to the association gave him no greater rights than non-borrowing members had. Besides, an accounting in respect to particular shares of stock is " a practical impossibility." Endlich, § 129. Complainant does not pray for liquidation of the first series, but only for an accounting as to his own shares. Others have rights, and are equally entitled to whatever of profit there may have been in his particular transaction, and he must continue to pay his dues until maturity of his stock, or he will lose that profit.

Argued orally by *E. E. Baldwin* for appellant, and *T. A. McWillie* for appellee.

Woods, J., delivered the opinion of the court.

The questions involved have been so often and so exhaustively considered by courts of last resort that it appears like beating threshed straw to do more than announce the views of this court.

1. The premium of $400 represents the discount agreed to be made upon the future and uncertain dividends of appellant's shares of stock in the association. It is the difference,

estimated by the association and its borrowing member, between the par value of the member's shares of stock and their present real value. It is the bonus which appellant might lawfully agree to pay for a present advancement in cash of a sum certain for the virtual transfer to the association of his shares of stock, which, in the final winding up of its affairs, may realize the sum actually received by the member, together with the premium bid, or which may not. · It is not a deduction of money belonging to him, for, at the time of the transaction, appellant had only a future interest in the association's earnings and accumulations. It is not a prepayment of that amount by appellant, for the premium of $400 will be paid, if at all, when the $600 advanced is repaid.

We are of opinion, therefore, that the premium does not render the contract usurious.

2. It logically and legally follows that interest cannot be charged on the premium. " If it were a deduction, it would be analogous to the bonus reserved in advance by usurers upon loans made by them, ostensibly at legal interest, the debtor being, nevertheless, required to pay that interest upon the whole nominal sum, as if he had received it entire, thus virtually paying interest upon the bonus. If it were intended to be a prepayment, the borrower, since he in fact does not hand it over immediately, ought to pay interest upon it to the society, as for the forbearance of a debt presently due." Endlich's Law of Building Associations, 396. From the nature of the premium—being neither a deduction nor a prepayment, but only, in effect, a relinquishment of a prospective, contingent interest in appellant's shares of stock—it is impossible to conceive of interest predicable thereon, unless wild legislation shall be found to authorize it. It is startling to the judicial mind to be forced to consider a proposition which involves the assertion of a right to take interest upon a purely imaginary sum. Interest, to the legal and common mind alike, means compensation for the loan or use of money,

and to talk of interest upon the appellant's premium of $400, a sum which is mythical, which he never saw, which was not in existence, and which, if it ever came into being, was to be the property of the association, is paradoxical indeed. The contract, to this extent, is oppressive, illegal and essentially usurious. And to this effect is the almost unbroken current of authority. In the one or two exceptional cases, unwise legislation constrained the action of the court.

And this brings us, in an orderly way, to the contention of appellee's counsel that such legislation is found in the acts of our legislature, 1886, p. 35. We cannot agree with the learned counsel. The utmost that this remarkable act can be said to do is to authorize building and loan associations to stipulate for and demand a greater rate of interest than ten per cent. per annum " for any money advanced or loaned " by it. Legislative tenderness for such corporations has not yet gone, as counsel suppose, to the violent extreme of permitting even these favored associations to stipulate for and demand any extortionate rate of interest which its greed and its borrowing member's necessity might fasten upon the unhappy and necessitous creature, on any imaginary sum of mythical money which they agreed to name, even though such sum was never seen by the member, and even though such sum had no existence, in fact, at the time of the transaction. For the present, the borrowing member can only be constrained to pay extortionate and usurious interest upon " *money advanced or loaned* "—money which he actually received and had, and not upon forty per cent. of all his shares of stock in the association, which he has virtually transferred to the association, under the name and in the form of a premium.

3. The averments of the bill, substantially stated, as to the illegal abrogation of the charter provisions in force when appellant became a member, and when he had the transaction out of which this litigation arose, as to the use and disposition of all funds arising out of the business of the first series,

and the consequent injury to appellant, are as follows : that the association, by a vote of the stockholders, from which all borrowing members were excluded, broke down all distinctions between the first and all other and junior series, and mingled the business of all in one common mass, whereby all stockholders in any series were made sharers equally of all profits arising in all the various series ; that the premiums at first were high, and gradually decreased from forty per cent. to nothing; that the $400 premium bid by appellant represents that much accumulated profits, in which appellant has an interest, and this, by the action of the association, had through persons who were not members of the first series (the share-holders in the many subsequent series largely outnumbering those in the oldest, the first, of which appellant was a member), has been divided out among all the stockholders in all the various series, thus taking from appellant profits, which, if properly applied, and as should have been done, to his stock, would bring it up to par, and would put the association into liquidation, and would cancel his debt.

These averments are of material matters entitling the appellant to relief, if true, and the demurrer admits their truth. The defendant corporation, against which these serious charges are made under oath, should have been required to answer.

*Reversed and remanded.*


*Nugent & McWillie*, for appellee, filed a lengthy suggestion of error, reviewing in argument the entire subject-matter of controversy, and, in support of the contention that the premium, and taking of interest thereon, do not make the contract usurious, citing the following authorities, in addition to those cited in the brief: *Montgomery* v. *Robinson*, 69 Ala., 419; *Ib.*, 456; 20 S. W. Rep. (Texas), 116; *Ib.*, 118.

Under the act of 1886, the sum received is no more a loan than is the premium. The words, "money advanced or loaned," should not be held to have the restricted meaning

applied to them in the opinion.  The manifest intention of the act was to except building and loan associations from the usury laws.

WOODS, J., delivered the following response to the suggestion of error:

The very respectful, yet very determined, earnestness with which the learned counsel for appellant press their suggestion of error seems to call for a word by way of response.

The argument of counsel is the strenuous effort of acute intellect and dialectical skill to make that which appellant, in effect, parted with and surrendered up to the company—to wit, the premium of $400 in his shares of stock—appear to be not a loan perhaps, but a something which he is due the association, and for forbearance to collect which he should be required to pay, not interest at eight per cent. per annum perhaps, but something which will perform the beneficent purpose of securing eight per cent. to the association from the appellant.  Careful examination of the argument demonstrates its unsoundness.  It is the argument once considered by us presented under new and alluring aspects, but it is, after all, but the winning and seductive effort to gain the beguiled assent of the judgment to the taking of interest on a sum never advanced or loaned, a purely imaginary but precious fancy of the usury-taker—a sum called a premium, which the borrower has virtually surrendered, and the association accepted; a sum which the borrower is never to see again, but which the association really has the only beneficial interest in, and which, if there be no miscarriage, the association will finally put bodily in its coffers.  The premium is now, in truth as well as in effect, the property of the association, and has been parted with forever by the borrower, and we are slow to listen to any voice, though " charming never so wisely," which seeks to fasten any thing in the shape or nature of interest thereon upon the borrowing member.

We have thoroughly considered the authorities submitted by counsel, and find they give their theory no support.

The very recent case from the supreme court of Illinois, *Mutual Building and Loan Association* v. *James B. Tascott,* does not touch the question.   True, it is allowed that interest upon the premium was permissible and proper, but an examination of Starrs & Curtis' Annotated Statutes of Illinois discloses the fact that the charge of interest upon the premium is expressly warranted by legislative enactment.   See page 78 of said work.

The case of *Montgomery, etc., Association* v. *Robinson,* 69 Ala., 419, asserts the doctrine contended for by counsel, but an examination of the acts of the Alabama legislature, 1866–67, p. 414, discloses legislative authority given the association to collect interest upon the premium.

The case of the *International Building and Loan Association* v. *Abbott et al.,* supreme court of Texas, not yet reported officially, but which counsel furnish us from advance sheets, is authority for the doctrine that when the whole amount of interest charged the borrower, on every account, sum actually advanced and premium, does not exceed the maximum rate of interest in that state, the contract will not be usurious. We express no opinion as to the soundness of this view; but, sound or unsound, that is not the question involved in the case before us.   Besides, in *Jackson* v. *Cassidy,* 68 Texas, 282, the supreme court of that state, when the question of allowing interest upon a premium was squarely presented, emphatically repudiates such interest charge as usurious.   Says Willie, C. J.: "The weight of authority holds it unlawful to charge interest upon the premium; for this is a charge, not upon what the member receives, but upon what he relinquishes to the society."

The two Arkansas cases, *Reeve* v. *Ladies' Building Association* and *Taylor* v. *Van Buren Building and Loan Association,* do not determine the point in controversy; they do not even allude to it.   They have no sort of relevancy to the

controversy in hand.  In one, it was held that there can be
no usury in a building association mortgage which expressly
stipulates that the borrower shall not pay more than the legal
rate of interest; and in the other, there is a repetition of the
early learning touching the nature and character of the loans
and .contracts of building and loan associations, beginning
with *Delano* v. *Wild*, 6 Allen, and *Bowker* v. *Association*, 7
Allen, and coming down to Endlich's work on the subject.
But there is no syllable of support for the contention of the
counsel for appellant.

The case of the *Vermont Loan and Trust Company* v. *Whit-
head,* supreme court of North Dakota, not yet reported, is a
voluminous gathering up and rehearsal of law learning on
building and loan associations, beginning with the English
case of *Selver* v. *Barnes,* 6 Bing. N. C., 180, the earliest au-
thority with which we have met.  But, interesting as the
learning might prove to one unread in it, the novice would
fail to find in the Dakota case any support for the counsel's
position, for the reason that, by statute of that state, interest
on premiums is allowed to be charged.

The case of *Citizens' Mutual Loan Association* v. *Webster,*
25 Barb., 263, justifies the taking of interest upon a premium,
but upon a judicial interpretation of a statute of New York,
which the court said must be held to allow the collection of
interest upon the full amount of the share—that is, upon the
sum actually loaned or advanced, and upon the premium.

These are the cases cited and relied upon by the learned
counsel.  The supposed support derivable from them for
counsel's contention vanishes at the touch of investigation.

We thought it unnecessary to quote authorities in deliver-
ing the former opinion of this court.  The field of inquiry
had been so thoroughly explored, and the general subject so
often and so exhaustively considered, that we declined to
beat again the threshed straw.

See Endlich on Law of Building Associations; Am. & Eng.
Enc. of Law, same subject; Thompson on Building Associa-

tions. See, too, the many adjudications of courts of the last resort, cited in the three text-books named, holding interest upon premiums is inadmissible.

We have no doubt as to the absolute correctness of the former opinion of the court, and we adhere to it.