PEOPLES' BUILDING & LOAN ASSOCIATION *v.* M. G. McELROY ET AL.

1. BUILDING AND LOAN ASSOCIATION. *Interest on premium. Cancellation. Withdrawal.*

   A borrowing stockholder in a building and loan association, who has paid illegal interest on his loan, may compel the association to apply it to his account for legal dues and interest, and to pay him the balance, if any. But, without withdrawing and ceasing to be a member, he cannot have a cancellation of his loan contract, but continues liable for dues and legal interest, and for fines properly assessed against his stock.

2. PREMIUM; WHEN DUE. *How liquidated. Interest illegally collected.*

   In such case, the association cannot retain the illegally collected interest as a credit on the premium, that not being due, but subject to be liquidated by payment of monthly dues, interest and fines.

3. INTEREST ILLEGALLY COLLECTED.  *Accounting; how made.*

On an accounting between such borrowing member and the associa-
tion, all interest paid on the premium, with legal interest thereon
from date of each payment, should be applied to the payment of
monthly dues and interest.  If this should be exhausted, he should
then be charged with dues, interest and fines (not including fines
on fines) on all subsequent failures to pay, with interest according
to the contract.

FROM the chancery court of Lauderdale county.

HON. W. T. HOUSTON, Chancellor.

Appellees, M. G. and I. R. McElroy, filed this bill against
the Peoples' Building & Loan Association to enjoin the fore-
closure of a trust-deed, and to cancel the same, and for an ac-
counting.  The facts necessary to an understanding of the
questions decided by the court, briefly stated, are as follows:
In August, 1887, appellees, M. G. McElroy and I. R. McElroy,
bid off a loan of $1,800 offered by the Peoples' Building &
Loan Association, in which M. G. McElroy was stockholder,
at a premium amounting to $693.  They gave to the associa-
tion their note for the entire $1,800, bearing interest at the
rate of ten per cent., and, to secure the performance on their
part of the loan contract, executed a trust-deed on certain land,
and transferred to the association, as collateral security, nine
shares of the capital stock of the association owned by M. G.
McElroy.  They received from the association $1,107, the
amount of the loan less the premium, and the loan contract
stipulated that, until the stock reached its par value, appellees
should pay monthly installments of $1 per share, being $9 for
the nine shares of stock, and interest at the rate of ten per cent.,
payable monthly.  The contract contains the usual stipulations
for the payment of fines in case of default, and provided that,
when the stock should reach its par value, the debt should be
liquidated.

From the date of the loan, appellees paid the monthly dues·
and interest, as stipulated, the interest being computed not on
the sum received, but on the total amount the loan, which

included the premium.    They paid in this manner until September, 1892, when they made default, and the association caused the trustee in the deed of trust to advertise the property for sale, whereupon, appellees filed the bill in this cause.    The bill charges that the payments which had been made by appellees exceeded by $397 the sum of $1,107, received by appellees; that the loan contract was usurious, and that the association forfeited its right to collect any interest.    The bill prays for a cancellation of the contract and a personal decree for the balance due complainants.

The answer of the association, while admitting that interest was improperly collected on the premium, denies that the contract was illegal or usurious, or that the association forfeited its right to collect the interest on the $1,107 actually received. It offered to give complainants credit for the full amount of interest paid on the premium as against the premium itself. And also to give complainants credit for the earnings of the stock, so far as they were enhanced by the interest on the premium paid by complainants.

On the filing of the bill a temporary injunction was granted restraining the sale under the trust-deed, and, on final hearing, the court held that so much of the interest as was paid on the premium was illegally collected, and that complainants were entitled, at their option, to have the same applied to their account for monthly dues and legal interest, after they ceased to pay, they continuing to be members of the association on paying their dues and interest on the $1,107 at the rate of six per cent. per annum, paying monthly, and all fines after that date, which the illegal payments, with interest thereon at the rate of six per cent. per annum, will not satisfy; or to withdraw from the association, and to have an accounting as of the date of the last payment of dues and interest.  In the latter event, the decree provided that complainants should be charged with $1,107, and be entitled to credit for such proportion of the withdrawal value of the nine shares of stock of that date as

the $1,107 actually received bears to the $1,800, the amount of the loan; to be ascertained by deducting from the nominal withdrawal value of the stock the profits earned by the money paid by complainants as interest on the premium. In other words, the per centum of profits earned by the stock, during said time, should be ascertained, and also the profits earned by the money paid by complainants as interest on the premium, and this profit deducted from the nominal value of the nine shares of stock at the date of the last payment, and complainants credited with such proportion of the remainder as $1,107 bears to $1,800, and also with interest on the premium paid by her, with interest at six per cent. per annum. And if there should remain a balance due the association, the complainants should be charged with ten per cent. interest thereon, from the date of the last payment. And if there should be a balance due the complainants, defendants should be charged with interest thereon at the rate of six per cent. per annum thereon from the date of the last payment.

The decree directed an accounting in accordance with the foregoing finding. The decree also directed an alternative statement of the account to be made by charging complainants with the face of the loan, and crediting them with interest on the premium and interest thereon at six per cent., with return premium, and with dues on the stock, and with the profits thereon. The commissioners stated the account in both aspects; finding, according to the first, a balance due the association of $264.33, and this report was approved, and, except as to said sum, the injunction was perpetuated. Complainants were allowed to pay said amount within thirty days, and, on the payment thereof, the injunction should be retained. From this decree the association appeals.

*S. B. Watts*, for appellant.

Admitting that the court had the power to allow M. G. McElroy to withdraw from the association, this not having been

done, or even prayed for in the bill, the methods of stating the account were unfair, uncertain, impracticable and speculative. The different results reached demonstrate that one or the other was wrong, and that both were wrong.    There can be no forced settlement of an account until liquidation.    Endlich on Building Associations, §§ 128–153, 329, 336, 452–457.    Except so far as interest was exacted on the premium, the stipulations between McElroy and the association were mutually binding. *Association* v. *Shields*, 71 Miss., 630.    Complainants are entitled to have refunded the interest paid on the premium, with six per cent. interest thereon.    This, with other things, went to make up the book value of the stock.    The refunding of the interest on the premium, with legal interest on such interest, puts the complainant in a position different from that of other stockholders.    If they are allowed to withdraw from the association, they have the right to have their stock, at its real value, applied on the debt.    This value cannot be obtained with any degree of accuracy.    It is equally difficult to find the amount of the unearned premium.    It is unfair to the association, after refunding the interest on the premium, to allow complainant credit for unearned premium.    The settlement must proceed on the lines laid down in *Sullivan* v. *Loan Association*, 70 Miss., 94, and *Goodman* v. *Loan Association*, 71 *Ib.*, 310.

*Miller & Baskin*, on the same side.

The bill is based on the idea that appellees had the right to repay the loan and withdraw from the association.    The contract does not contemplate the repayment of the loan and adjustment of the account before liquidation of the debt in the manner contemplated by the contract and the charter of the company.    Appellees are bound by the stipulations of the contract, and must pay dues and legal interest until the stock has reached its par value, when it can be exchanged for the debt, and the debt be thereby liquidated.    The association cannot compel the payment of the principal of the debt at any time be-

fore the period of liquidation, nor can the member insist upon repaying the loan before that time.    2 Am. & Eng. Enc. L., 639. Until liquidation of the debt by exchange of stock therefor, the stock is held as collateral security, and not as a credit on the debt.    As complainants had not withdrawn from the association, the injunction should have been dissolved and the bill dismissed.

The method of accounting prescribed by the decree, is manifestly unjust and erroneous.  Besides, the commissioner, in taking the account, did not follow the decree.    Appellees were clearly in default for six months dues when the bill was filed. They had never withdrawn from the association, and, at the time of the accounting, they were in arrears for dues for eighteen months.    Yet appellees were allowed credit on their debt for the value of the stock at the time of the last payment, although they were not charged with the dues on the stock or interest on the debt from that date.    If they were entitled to credit for the true value of the stock, they should, of course, be charged with dues thereon, and interest on the debt up to the time of the accounting.

The association was entitled to charge complainants with the full amount of the premium.    *Sullivan* v. *Loan Association,* 70 Miss., 94.    Interest on the premium is not legal, but the premium itself is not affected, and is collectible from the borrower.    The association is not liable for profits except on dissolution, and then only to those who have preserved membership.    Endlich, § 156; 2 Am. & Eng. Enc. L., §§ 623, 637.    Interest should not be allowed on the stock payments.    *Ib.*, 642.

*Hamm, Witherspoon & Witherspoon,* for appellee.

The principal complaint of appellant is that the commissioner failed to charge complainants with the full face of the note, and that the court decides the appellant cannot collect the premium of $693.    We submit the premium is not collectible. *Sullivan* v. *Loan Association,* 70 Miss., 94.    It was in that

case distinctly held that interest upon the premium was usury. Now, by statute, all debts bear interest, and the court, by deciding the premium cannot bear interest, necessarily decides that it is not a debt.    Besides, the premium cannot be charged against complainants in the settlement, because, from its very nature, it is not a thing which the association has a right to collect.    In the Sullivan case the premium was declared to be a discount on the stockholder's shares of stock; in other words, the difference between the par value of the stock and the present real value.    Stock is a thing the association is bound to pay, and not entitled to collect.    The association admits that the collection of interest on the premium was illegal, yet it proposes to appropriate that illegal interest as a payment upon the premium itself.    The scheme of building and loan associations does not contemplate the collection of premium, or any part thereof, but that, by the collection of fines, interest and dues on the stock, the association will finally make enough to pay the non-borrowing members the face of their stock, and the notes of the borrowing members will be liquidated by their stock.    Complainants were entitled to credit for the full amount of the withdrawal value of the stock.    If this be credited with the usurious interest thereon, the credits would overpay the loan by about $300, and would entitle appellees to cancellation of the trust-deed and a personal decree against the association.

WOODS, J., delivered the opinion of the court.

The opinion of this court in the case of *Sullivan* v. *Building & Loan Association*, 70 Miss., 94, and our affirmance of the decree of the chancellor on the second appeal of the same case to the March term, 1894, of this court, will largely control the present controversy.

The appellees were entitled to no cancellation of what now seems to them a hard contract, and they had not, when their bill was filed, or when their cause was heard and determined in the chancery court, or now, ceased to be members of the loan

association, and they were and are bound to perform their contract according to the mutual stipulations and agreements of the parties thereto.

The interest on the premium which had been collected from appellees by appellant was the money of appellees at the time of suing out their injunction, and which they had the unquestionable right to have paid on their account for dues, interest and fines, to the extent which appellees were then delinquent; and their right to demand payment of any balance to them directly is also unquestionable. The association was clearly wrong in refusing to pay to appellees this illegal interest collected on the premium, and in insisting upon entering it as a credit on the premium. The premium was not due; it was to be liquidated by the monthly dues, interest and fines, when the stock in the series to which appellees belonged should be liquidated by that same manner of payment. But when the period had expired for which this wrongfully collected and wrongfully detained illegal interest on the premium would, if properly applied, have kept paid up appellees' dues, interest and fines, and appellees then and thereafter failed and refused to comply with their contract to pay dues, interest and fines, they again became delinquent, and subject to be proceeded against by the association for the enforcement of payment by resort to the security appellees had given. The injunction was properly granted when prayed, but improperly retained when appellees again became delinquent in payment of dues, interest and fines.

The proper method of stating the account between the parties (and this was all the appellees were entitled to) will be briefly indicated: Appellees should have credit for all the illegal interest paid on the premium, with interest at six per cent. on the same from date of each such payment of interest on premium; and this should be applied to payment of their monthly dues and interest until exhausted. Then they should be charged, according to their contract, with dues, interest

and fines on all subsequent failures to pay, with interest, according to their contract, not including fines on fines, if they are or shall be found to be in arrears, after deducting credits for any and all payments made by them.

If, on such accounting, the borrowers shall be found to be in arrears, the injunction should be dissolved, and a sale ordered, giving appellees a reasonable time within which to comply with the terms of the decree; and if they pay, no sale will take place, of course.

Reversed on appeal and cross-appeal, and remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*