MARY T. GOODMAN v. DURANT BUILDING & LOAN ASSOCIATION.

1. BUILDING AND LOAN ASSOCIATIONS. *Incorporation. Powers. Obligation of members.*

Under the general law and without a special statute, building and loan associations may be incorporated, with customary and appropriate powers not inconsistent with law, the vital principle being the compounding of monthly receipts for the mutual benefit, with the imposition of a fine, an agreed sum, as liquidated damages for every default in payment. Members may bind themselves by such a scheme, and will be held to performance of what they have agreed.

2. SAME. *Interest on premiums. Invalid contract.*

It is not permissible for a building and loan association to collect interest on premiums, though stipulated for in the contract. *Sullivan* v. *Loan Association,* 70 Miss., 94.

3. USURY. *Code 1892, §§ 4, 2348. Existing contracts. Defenses preserved.*

The change made by § 2348, code 1892, exempting building and loan associations from the operation of the penalty against usury, did not free prior illegal contracts from objection, for § 4 of the code preserves, unaffected, any existing cause of action or defense.

4. TRUST-DEED. *Place of sale. Code 1892, § 2484; applicability.*

Section 2484, code 1892, requiring a sale under trust-deed to be made at the place fixed for sheriff's sales if the deed does not name the place, will not control where the trustee is vested with discretion to fix the place; it applies only when the deed is silent on the subject.

FROM the chancery court of Holmes county.

HON. T. B. GRAHAM, Chancellor.

On December 10, 1891, Mary T. Goodman borrowed from the Durant Building & Loan Association $2,362.50, and gave her note for $3,500, with interest thereon at the rate of ten per cent. per annum, the interest payable monthly on or before the fifteenth day of each month. The difference between the amount received by her and that for which the note was given represented the premium bid by her for the money. She subscribed for and received shares of stock of the association, and to secure the loan she pledged 17½ shares, and gave a trust-deed on certain real estate situated in Tchula, Holmes county, Miss. In addition to the interest, she was obligated by the contract to pay one dollar per month on each share of the stock pledged by her, until the liquidation of the series to which the stock belonged. She paid, in all, the sum of $394, and made default, after which the property was advertised for sale under the trust-deed. The deed names no place of sale, but provides that the trustee shall advertise said property for sale, naming the time, place and terms of sale. The sale was advertised to take place at Durant, in Holmes county. Thereupon she filed the bill in this case January 9, 1893, to enjoin the sale, alleging that the contract was usurious and illegal; that the association claimed an arrearage of $381, aggregating, with what she had paid, the sum of $797, for the use of $2,362.50 for eleven months; that at the time she borrowed the money it was her information and understanding that she was to have it on more reasonable terms than ten per cent. per annum; that the association is not entitled to the amount specified in the note in excess of what she had received; that if it is entitled to premiums, fines and compound interest, and she is a member, she is entitled to her proportion of the same, but that in borrowing the money she did not know that she was joining the association. She made several allegations as to misrepresentation and fraud practiced upon her in the execution of the note

and trust-deed, but these are denied by the answer, and as the court makes no reference to the same, it is not deemed necessary to otherwise refer to them. It was also alleged that the trustee had no power to sell at Durant, it not being the county site.

The prayer of the bill was for an accounting; that usurious charges of interest be excluded; that fines and premiums be disallowed; that the amount legally due by complainant to the association be ascertained, and that she be allowed to pay the same, and for general relief. The trustee and the association were made parties defendant, and the writ of injunction was granted.

The defendants answered, showing that the charter of the association was granted under the general laws of the state April 7, 1887, and they filed with their answer a copy of the same, and of the by-laws. They deny all allegations as to misrepresentation; deny that appellant was informed or understood that she was borrowing money at the rate of ten per cent. per annum or less, and allege that it is a matter of estimation and judgment as to what rate of interest a borrowing member will pay, but aver that if complainant will comply with her contract the rate of interest will be less than ten per cent. per annum. They allege that complainant had been in default a long time, and was due the association the sum of $3,968.30 at the time the property was advertised for sale, this amount including interest and fines; admit that ten per cent. interest on $3,500, payable in monthly installments, was contracted for; allege that complainant, by her default, has forfeited all interest in the profits of the association under the by-laws, and is only entitled to a credit on the note for the amount she has actually paid. They aver that the association was organized April 15, 1887; that the par value of the stock is $200 per share; that under its plan and working the stock of the association will mature in seventy-five or eighty months; that complainant bid 32 per cent. premium for part of the money received by her, and 32½ per cent. on the bal-

ance, and that the amount of the loan, less the premium, was paid to her when she delivered her note and trust-deed for $3,500, as stated. They allege that if complainant's obligation is complied with, the stock will mature and the debt be extinguished in seventy-five or eighty months; deny that the transaction was usurious or unlawful, and allege that the association has been and is in a prosperous condition, and that great benefits will accrue to borrowing members thereof who pay promptly.

The charter of the association conferred upon it the powers usually belonging to such associations. Section 2 provides for the issuance of a certain number of shares of stock of $200 per share in each series. Section 7 provides for the payment in advance of a monthly installment of $1 per share. Section 8 provides that every stockholder who shall neglect to pay his monthly interest as the same becomes due, shall forfeit and pay, in addition, the sum of ten cents per month on every dollar of dues owing by him, dues of each month to be taken separately. Section 20 provides for monthly meetings, at which the funds of the association on hand shall be offered for loan, and that the stockholders who shall bid the highest premium for the preference of the loan shall be entitled to receive a loan of $200 for each share of stock, to be secured by trust-deed on real estate for stock of the association. This section also provides as follows: " In case of non-payment of installments or interest by borrowing stockholders for the space of four months, payments of principal and interest, without deducting the premium paid or interest thereon, may be enforced by proceeding on their securities according to the terms of the contract under which the loan is made."

The trust-deed executed by complainant provided that she should keep the buildings on the property therein described insured against loss by fire. There is nothing in the trust-deed or elsewhere as to repaying the loan other than what is contained in section 16 of the by-laws, which is as follows:

"A loan may be repaid by a borrowing stockholder at any time, or he may repay a loan on (or withdraw) one or more shares, and continue entitled to the privilege of a stockholder for other shares in his possession and not withdrawn."

The evidence showed that complainant had been in default in the payment of interest and dues for more than four months before the property was advertised for sale. The complainant made no tender with the bill of any amount due by her on account of the loan.

At the February term, 1893, of the court below, soon after the injunction was granted, defendants made a motion to dissolve the same, which motion was based principally upon the ground that complainant had not tendered the amount or amounts due the association under her obligation, although the bill showed that she was in arrears. This motion was taken under advisement by the chancellor, who, in vacation, ordered the clerk to state an account between complainant and the association, and this was done. The cause coming on for final hearing at the next term of court, the decree complained of was rendered. The complainant was charged with monthly dues on the stock she had subscribed for, and with interest she had agreed to pay, and was credited with the amounts she had paid. Upon the balance due by her at the end of each month, she was charged ten per cent. for fines, but fines were not charged upon fines.

After the foreclosure proceedings had been commenced, and the bill of injunction had been filed, the buildings embraced in the trust-deed were destroyed by fire, and, on April 29, 1893, the association received $1,014.75, proceeds of insurance on such buildings, and this was brought to the attention of the court by a supplemental bill. The decree confirming the report of the commissioner adjudged that complainant was in default in the sum of $298.48 on December 15, 1892, and $1,118.24 August 15, 1893. She was charged with the $3,500 and monthly interest thereon to the date of the decree, and was allowed credit for payments of $1 per

share for twenty-two months, aggregating $440. She was also allowed credit for the $1,014.75 insurance money, with ten per cent. interest thereon from April 29, 1893, date of payment. It was decreed that she was due $3,986.82, less unearned premiums for fifty-eight months at $14.21 per month, which were credited to her, aggregating $824.18, leaving a balance due by her to the association of $2,272.64. The final decree directed that she should pay this amount, but that the injunction should be made perpetual in so far as it prevented a sale of the property at Durant. In all other respects, the injunction was dissolved. From this decree the complainant appealed, and the association prosecuted a cross-appeal.

The appellant assigns for error generally that the court erred in stating the account and in rendering the decree. Cross-appellant assigned for error (1) that the court erred in allowing complainant credit for unearned premiums; (2) in perpetuating the injunction as to the sale of the property at Durant; (3) in refusing to dissolve the injunction on motion of defendant, because no tender was made.

*A. M. Harlow,* for appellant.

Charging interest with monthly rests amounts to compounding, and that is usurious and illegal. If the defendant knowingly made a contract which is usurious, it cannot be enforced, and all interest must be rejected. It is no answer to say that the defendant, being a building and loan association, is not subject to our usury laws. The charter, being granted under the general laws, chapter 38, code 1880, confers no power which is in conflict with the laws of the state; nor can the association make by-laws in violation of the statute. When the charter was granted, the legal rate of interest was six per cent., ten per cent. being allowable by contracts in writing, and the statute provided that if a greater rate should be charged, all interest should be forfeited. Code 1880, § 1141. We contend that this statute is

not changed by the act of 1886 or the code of 1892. It will be noticed that the statute provides for ten per cent. per annum, excluding the idea of monthly rests.

We insist that complainant is not liable for the payment of fines. On this point, we refer to 2 Story's Eq. Jur., §§ 1314, 1316. The sound and safe rule on this subject is laid down by Endlich in his valuable work on building associations. He says that no such association is permitted to charge fines except by authority of charter, derived from statutory enactment. See § 405. In support of this rule, the author cites the following : *Building Association* v. *Graham*, 7 Neb., 173 ; *Ib.*, 181 ; *Jarrett* v. *Cope*, 68 Pa., 67 ; 82 *Ib.*, 180 ; *Link* v. *Association*, 89 *Ib.*, 15. If there be no statute authorizing the imposition of fines, none can be exacted. Thompson on Building Associations, p. 100.

If in our state there was a statute authorizing these associations to impose fines, still the power would be subject to well-settled restrictions, whether the statute contained the restrictions or not. Endlich, § 406. These restrictions are : (1) That the fines must be certain and notoriously established by law ; (2) they must be reasonable and not oppressive. *Hagerman* v. *Building Association*, 25 Ohio, 186 ; *Association* v. *Gallagher, Ib.*, 208.

In Pennsylvania it is held that a by-law imposing a fine of ten per cent. as a penalty is unreasonable and oppressive, and therefore void. *Lynn* v. *Association*, 11 At. Rep., 540. Further on this subject, we refer to Davis on Building and Loan Societies, p. 165.

At a time when there was more plausibility than now for arguing that a corporation like the defendant belongs to a favored class, relieved from the operation of general laws, this court announced that the legislature had no power to make discrimination among citizens of the state ; that it could not place restrictions on one class of citizens not placed upon others, and that all laws must be general. See *Railroad Co.* v. *Moss*, 60 Miss., 641.

" The legislature shall not pass a special law in favor of any person or in favor of any class of individuals in regulating the rate of interest on money." Const. 1890, § 90.

" The operation of no general law shall be suspended by the legislature for the benefit of an individual or private corporation or association." *Ib.*, 87.

A general law having been enacted regulating the rate of interest, the legislature attempted to suspend the whole of § 2348, code 1892, by providing that it should not apply to building and loan associations domiciled in this state dealing with its members. This attempt to suspend the statute in favor of this class of corporations is in violation of the constitution.

It will be seen from the evidence in this case that the actual profits in premiums, without considering the extortionate fines and interest, is nearly fifty per cent. of the amounts actually loaned, and if such fines and interest be added, the profits amount to nearly seventy per cent.

On the question of usury and the error in allowing the association to collect the premium, we refer to *Association* v. *Lane* (Tex.), 17 S. W. Rep., 77.

*E. F. Noel,* on same side.

According to Endlich, the following propositions are fully established: 1. Building and loan associations, as now operated, are creatures of statute. 2. Without statutory sanction, neither premium nor interest thereon are collectible, and the same is true of fines. 3. Without statutory authority, any higher rate of interest than that which could otherwise be contracted for is usurious.

Appellee was incorporated under § 1027, code 1880, as amended. This section contains no allusion to building and loan associations. Section 1031 of said code provides that no by-laws of a corporation shall be inconsistent with the laws of the state. Such laws do not authorize usury.

Premiums are an essential feature to terminating associa-

tions, in which the member pays monthly dues, in addition to the regular prescribed legal interest upon the full face value of his loan, or upon the amount actually received by him, according as the one or other may be demanded under the statute of the several states. Endlich, § 41; Thompson on Loan Associations, § 23. Appellee belongs to a class known as a serial society. See Endlich, § 47.

The claim of interest upon premiums constitutes a paradox for which there can be no apology except that of positive legislative grant. Endlich, § 398, and authorities there cited.

The validity of the reservation of a premium, or whether the borrower may be held to his agreement to pay it, depends upon the statutory authority. Endlich, § 378; 39 Barb. (N. Y.), 103; 45 Md., 546, 549; 48 *Ib.*, 456; 6 Casey (Pa.), 469; 68 Pa., 70; 89 *Ib.*, 15, 75; 25 Ohio, 208. While in states where these associations are created by statute premiums are generally allowable, they are not so in some of the states, nor are fines collectible in such states. Endlich, § 383, and authorities there cited. On the point that fines are not collectible unless specially authorized by statute, the authorities are explicit and overwhelming. Endlich, §§ 92, 96, 97; 7 Neb., 173; 89 Pa.

Where the power of imposing fines is given, the fines must be reasonable and not oppressive penalties. Endlich, §§ 97, 413.

Ten per cent. upon the amount of delinquency, not only of dues but of interest, is grossly exorbitant. On this point see 7 Neb., 173; 75 N. C., 292; 12 Rich. (S. C.), 124; 2 Cold. (Tenn.), 418.

That the interest charged in this case is usurious, follows as a result of the attempt to collect ten per cent. on premiums and on the total amount of the note throughout the whole period, making the interest payable monthly in advance. Interest is of statutory creation. 5 Bacon's Abridgment, Title Usury, p. 407; Hawkins' P. C., 246; 11 Am. & Eng. Enc. L., 379; 25 Miss., 96; 51 *Ib.*, 205, 816; 64 *Ib.*; 544.

Where the incorporation is under a general law, its provisions point out a narrow path within which the creature of the law must move. Endlich, §§ 59, 64; 21 Ga., 592.

The act of 1886 was not intended to confer any power to charge more than the legal rate of interest. The intent was to merely repeal all acts authorizing a greater rate of interest than ten per cent.

There is no device by which these associations can take from those who borrow more than the legal rate of interest. 75 N. C., 292. The proper adjustment with a borrowing member is upon the basis of an actual loan of money and subsequent partial payments by the borrower. *Overby* v. *Association*, 81 N. C., 56; 2 Cold. (Tenn.), 418; 11 Bush (Ky.), 296; 12 *Ib.*, 110; 68 Pa., 70; 45 Md., 556; 48 *Ib.*, 456; Endlich, §§ 347, 350, 351, 355, 356, 418.

In the case of *Sullivan* v. *Association*, 70 Miss., 94, the act of 1886 was not directly construed, but it was settled that interest on premiums is illegal and "essentially usurious." There is no such unwise legislation in this state as will sanction the contract sought to be enforced here.

Section 2348, code 1892, has no application to this case, because the contract was made before the adoption of the code.

*J. Wiener*, for appellee, cross-appellant.

1. Section 2348, code 1892, leaves building and loan associations unaffected by our statutes against usury. The repeal of usury laws is retrospective. Cooley on Const. Lim., 373, 375; 4 Conn., 224; 28 *Ib.*, 97; 16 Ohio, 347; 17 Barb., 309; 15 N. Y., 9; 108 U. S., 143.

The act of 1886 (Laws, p. 35), construed in the case of *Sullivan* v. *Loan Association*, 70 Miss., 94, is in *pari materia* with § 2348, code 1892, and this section relieves contracts made by building and loan associations with its members of all usury. The charter of appellee in its provisions as to premiums, interest, etc., is similar to the charters of such associations in

Pennsylvania, which have been upheld.    See Endlich on B. & L. Associations, §§ 20, 34, 398.

2. There is nothing in the transaction with complainant warranting the interference of a court of equity.    No fraud, misrepresentation or undue influence is shown.    The association is a voluntary one, for the mutual benefit of all its members.    Complainant, as a member, is entitled to share all its benefits.    The methods adopted to enforce payment of dues, the loaning of money, etc., are perfectly fair, and are well understood.    The premium bid amounts to nothing more than anticipating the earnings in the association.    The provision for the payment of fines is not extortionate.    This is fixed by the charter, and is one of the most essential elements for the preservation of the association.    The fine is nothing more than compensation for the inconvenience, embarrassment and actual loss sustained by the delinquency of defaulting members.    The imposition of fines has been repeatedly sustained.    See Endlich, § 411, and authorities there cited.

3. Complainant is not entitled to any accounting at this date, nor until the dues and profits mature her shares of stock.    See *Association* v. *Conner*, 1 McCart. (N. J.), 219.    It is part of complainant's obligation to pay the monthy dues and interest until the liquidation of the series.    Until then, she has no right to any profits.    Endlich, §§ 455, 456, 457. and authorities cited; 15 Gray, 130; 89 Pa., 15; 97 *Ib.*, 514,

4. The only credit complainant is entitled to is the payment of dues on her shares of stock for twenty-two months. She is not entitled to the allowance for unearned premiums. The charter of the association expressly provides that in case of non-payment of installments of interest by borrowing stockholders for the space of four months, payments of principal and interest, *without deducting the premium or interest thereon*, may be enforced.

The member executes his note for the full sum bid, it includes the premium, and the association is entitled to full

payment on foreclosure by force of the charter and the contract.    Endlich, § 457.

5. The trust-deed plainly empowers the trustee to name the place of sale.    Section 2484, code 1892, was merely intended to obviate the necessity of resorting to chancery where no provision is made for the mode of advertising, terms and place of sale, etc.

*Hooker, Wilson & Smith,* on the same side.

1. Even under the strict rules of the common law, interest could be collected as damages on bills of exchange.    Section 2348, code 1892, recognizes the right to collect interest, and simply regulates the rate, fixing the maximum at ten per cent. per annum, and providing for a forfeiture of interest charged in excess.    Building and loan associations are excepted from the operation of the clause as to usury. But appellee's charter was granted prior to the adoption of the code.

2. Members dealing with the association are not bound by the usury laws.    But if complainant had carried out her contract, she would have obtained her money for about seven per cent. per annum.    The amount due by her is the result of her own wrongful acts.    The business of the association is confined to its stockholders; its profits come from them and the prosperity and successful operation of the association depend upon a strict compliance by members with their contracts.    When members live up to their agreements, money is made rapidly, and the borrower, who is a member, shares proportionately in the profits, thus reducing the rate of interest on his loan.

3. The premium is not in any sense interest.    It is a bonus given for the preference of borrowing.    Thompson on Building & Loan Associations, §§ 21, 22, 76.    Whether the premium be paid by the borrower or be reserved out of the money he receives, it immediately goes into the common fund, to be loaned to other members.    It is an actual amount

in theory paid by the borrowing members, and constitutes a large part of the available funds of the association. The rights of the parties must be regulated by the agreements under which they act, unless there is something illegal in them. See *Patterson* v. *Association,* 14 Lea (Tenn.), 677, which is exactly like the case at bar.

4. The statement of account, confirmed by the decree appealed from, is correct, except as to the credit of unearned premiums. The rights and privileges of a voluntary retiring member are radically different from those of a delinquent one. All the authorities recognize this difference. Complainant was properly charged with monthly dues on the stock and the interest she had agreed to pay, and credited with the amount paid. Upon the balance due by her at the end of each month she was charged with ten per cent. interest and fines, and this was proper.

5. The object of fines is to compel members to observe their contracts, and is a source of profit to the association. The parties had the right to agree to the payment of fines, and the amount is by no means unreasonable when the profits of the association are considered. The truth is, the fines charged are not even compensatory. The association would realize more by the prompt payment of interest and dues than by the collection of fines from defaulting members. The prompt payment of the small monthly dues is the very life of the association, and adequate means must be observed to coerce parties to comply with their agreements in this respect. Fines bear hard only upon those who are continuously in default.

6. It is difficult to apply to these loans the rules which apply to other contracts. The associations deal in large figures. The premiums, interests and fines are apparently large, but, for that reason, the profits are large, and enable members, in about eighty months, to liquidate their debts with their stock, and at a cost of less than ten per cent. interest per annum. Complainant sought membership in this

company long after it had been incorporated, and with full knowledge of the terms upon which she would be admitted. She cannot now complain.

But the contract is not an oppressive one. If a member only performs his obligation, it is an easy contract, and his membership is profitable. If, on the other hand, he is unfortunate or improvident or short-sighted, and is unable to meet his obligations, he suffers the consequence, just as in other contracts.

7. That a defaulting borrower is not entitled to any of the profits is settled. Endlich on Building & Loan Associations, §§ 156, 175, 455. We insist that the court erred in allowing appellant credit for unearned premiums.

8. One who seeks equity must do equity. Complainant has never had any standing in court, because of her failure to tender the amount admittedly due. High on Inj., §§ 443, 447; *Osburn* v. *Andre*, 58 Miss., 609.

9. It was error to enjoin the trustee from selling at Durant. Section 2484, code 1892, has no application, because the trustee was, by the deed, vested with discretion to fix the place of sale. The bill should have been dismissed.

*Nugent & McWillie*, on the same side.

1. The act of 1882, amendatory of chapter 38, code 1880, provides that all corporations, except cities, towns, express, telegraph and railroad companies, may be created in the manner therein provided; and, further, that all corporations so created shall, in addition to the powers enumerated in the code, have certain designated powers and such other rights, powers and privileges as are necessary to carry into execution the purposes of their organization. Laws 1882, p. 50. It cannot be doubted that building and loan associations could be organized under this provision and authorized to exercise all the powers usually exercised by similar corporations, and all that may be fairly regarded as incidental to the objects for which they were created. 12 Md., 476; 15

Conn., 475; 11 Wis., 306; 62 *Ib.*, 304; 107 U. S., 98; 52 Pa., 125.

2. Opposite counsel rely on the case of *Sullivan* v. *Loan Association*, 70 Miss., 94, as denying the right to charge interest on the premium, and they deny the right to collect the premium, although such right is expressly recognized by that decision. In that case, the court, in searching for a meaning of the act of 1886, said that it simply authorized a charge of interest on the sum actually received, as contradistinguished from the premium, which was taken to be a lawful charge.

The old common law condemnation of interest is not adapted to the state of modern civilized society, and has gone to the limbo of the obsolete along with those against witchcraft and the like. It was never a part of the common law as it existed in America. Tyler on Usury, 37, 38, 39; 2 N. H., 42; *Selleck* v. *French*, 6 Am. Dec., 188, and note. Under the authorities, the right to charge interest is, in the case of special agreements, limited only by the usury laws.

Argued orally by *E. F. Noel*, for appellant, and by *G. A. Wilson*, *J. Weiner* and *T. A. McWillie*, for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

We reject the notion that because no statute of this state expressly authorizes the creation of building and loan associations, therefore, none could be formed under the general law for incorporations. Under the general law, any corporation not prohibited could be formed with any customary and appropriate powers not inconsistent with law. The vital principle of such associations, as known to us, is compounding monthly receipts, whereby to produce astounding results, for the mutual benefit of all concerned, and what is called a fine (merely an agreed sum as liquidated damages) is imposed for every default in payment, as a spur to prompt payment, so as not to derange the process of compounding, which

must fail if there is want of payment as agreed, and failure of which would cause failure of the scheme. We see nothing wrong in members of full age and *compos mentis* mutually binding themselves to so beautiful a scheme for reciprocal advantage, and being held to the performance of what they have agreed.

Interest on premiums is not allowable. *Sullivan* v. *Jackson B. & L. Association*, 70 Miss., 94. The code of 1892 did not have the effect to free the contract from the taint of usury, if full sanction be given to the doctrine contended for, because of § 4, which preserves, unaffected by changes made by the code, any former cause of action or defense. Section 5 has reference only to crimes and forfeitures and penalties connected with them or growing out of some offense.

The trustee had the right to name the place of sale. Section 2484 of the code of 1892 does not hinder the grantor from authorizing the donee of a power in a mortgage or deed of trust to designate the time, place and terms of sale. The statute comes in when the instrument is silent on the subject. Empowering one to name time, place and terms is just as if the time, place and terms were inserted in the instrument by the maker, for, done by authority conferred by him, it is as if done by himself.

The transaction should be purged of all illegal charges, and the rights of parties adjusted after this on the basis of their stipulations mutually binding, and sale may be allowed according to the power conferred by the deed of trust. ·

*Reversed and remanded.*

NOTE.—The order remanding this cause does not specify the manner in which the accounting between complainant and the association is to be had, the entry being, in general terms, that the decree is reversed and the cause remanded, to be proceeded with in accordance with the opinion.    REP.