148 So. 139

### MOSELEY v. RITTER et al.

6 Div. 255.

Supreme Court of Alabama.

April 6, 1933.

Rehearing Denied May 25, 1933.

674

Theodore J. Lamar and Walter S. Smith, both of Birmingham, for appellant.

Ritter, Wynn & Carmichael and Victor H. Smith, all of Birmingham, for appellees.

KNIGHT, Justice.

This case has heretofore appeared in this court. Moseley et al. v. Ritter et al., 224 Ala. 58, 139 So. 94.

After the affirmance of this cause on last appeal, the present appellant, as the widow and personal representative of the deceased mortgagor, J. D. Moseley, filed an amended bill of complaint, in and by which Ida Belle Culpepper Green—theretofore appearing as a cocomplainant with the present appellant—and C. D. Ritter, the purchaser at the foreclosure sale, were made the only parties defendant.

While the cause, as now presented, is not one between pledgor and pledgee, yet the case does present some questions which arise out of a trust relation between the respondent Ritter, as the purchaser of the mortgage premises at the attempted foreclosure sale, and Ida Belle Culpepper Green, the mortgagee, and which questions, under the averments of the bill, necessarily have a bearing upon the main question presented for determination in the cause. And, in addition, a trust relation between said Ritter and the mortgagors was involved in, and arose out of, the power of sale contained in the mortgage now before the court. We say between the said Ritter and the mortgagors because said Ritter was a member of the firm of Ritter, Wynn & Carmichael, to whom the mortgage was transferred, and who in fact attempted to exercise the power of sale.

The averments of the bill clearly show that the said Green, mortgagee, and the complainant are in full accord and agreement as to the amount due on the mortgage, and have acted in concert in the attempt to regain the property from any claim or demand of Ritter. The fact is, in the original bill they appeared as cocomplainants.

By her amended bill, the complainant attacks the regularity of the proceedings to foreclose the mortgage, and she further insists that there was a perversion of the power of sale in the mortgage from its legitimate purpose to that of oppression of the debtor and the purposes foreign to that for which it was intended.

The prayer of the amended bill is that the complainant be adjudged entitled "to redeem (the property) by exercising the equitable right of redemption, or, if she is mistaken in the premises, that she may be permitted to redeem by exercising the statutory right of redemption." To that end complainant prays for "the ascertainment of the amount that she will be required to pay, and the person or persons and the amount they or either of them shall receive on distribution of the funds," and for general relief. In the eleventh paragraph of the bill, as it now stands, the complainant offers to pay to the proper person, to be ascertained by the court, as legally entitled thereto, such sum as the court shall decree she shall be required to pay and "as to which she is ready, willing and able so to do."

It is made to appear from the bill that the lands conveyed by the mortgagor in question were bought by the complainant and her husband, J. D. Moseley, of the respondent Ida Belle Culpepper Green, and, to secure the payment of a part of the consideration price, the purchasers executed the mortgage now before the court. Thereafter it appears that the said Ida Belle Culpepper Green and her husband became estranged, and divorce proceedings were instituted by the respondent Green against her husband. It appears that in the divorce proceedings the law firm of Ritter, Wynn & Carmichael, of which the respondent Ritter was a member, was retained by and represented, the respondent Green. It also appears that the husband of respondent Green, while the divorce proceedings were pending, and before the debt secured by the mortgage became due, advised the complainant that the indebtedness secured by the mortgage "was his property," and "forbade the complainant to pay unto the said Ida Belle Culpepper Green the said sum claimed by her."

It further appears from the bill that, pending the controversy which had arisen by reason of the claims of the husband of respondent Green, the said Ida Belle Culpepper Green sent the note and mortgage to her attorneys, Ritter, Wynn & Carmichael, who were then representing her in the divorce proceedings. At the same time, the said Ida Belle Culpepper Green executed and forwarded a transfer of the note and mortgage to Ritter, Wynn & Carmichael, which is in the following language:

"For value received, I, the undersigned, Ida B. Culpepper Green, do hereby grant, bargain, sell and transfer to Ritter, Wynn & Carmichael the within mortgage, the debt secured thereby and the notes evidencing said debt.

"[Signed] Ida Belle Culpepper Green.

"Signed, sealed and delivered at Detroit, Michigan, this 27th day of September, 1927, in the presence of

"Earl D. Burke
"Rosa Ottenberg, witnesses."

It is further made to appear from the averments of the bill that the said respondent Green advised the complainant, though subsequent to the foreclosure of the mortgage, that the note and mortgage were forwarded to the law firm of Ritter, Wynn & Carmichael for collection only; that at the time she executed the assignment of the note and mortgage no money was paid to her, nor was there any consideration passing to her, but she conceded that out of the moneys received by said firm it could retain a portion thereof for its legal services; that she had called upon the said law firm and demanded that they make settlement with the complainant and cancel and discharge said mortgage of record; that neither the said law firm nor the said Ritter had ever paid to her any money accruing from the foreclosure; that she repudiated the acts of said law firm. The eighth and ninth paragraphs of the amended bill appear in the report of the case.

It also appears from the bill that the said C. D. Ritter, the purchaser of the property, has not paid either the law firm of Ritter, Wynn & Carmichael nor the said Ida Belle Culpepper Green for said property; that he "attempts to excuse himself to the said Ida Belle Culpepper Green by contending that when he collects the said amount of the mortgage indebtedness from the complainant that he will then remit to her as the collecting agent or attorney."

The bill of complaint, as now framed, shows that the complainant was diligent and earnest in her efforts to pay off the mortgage indebtedness upon her property. And, in view of the fact that both Ida Belle Culpepper Green and her husband claimed to own the debt, the complainant endeavored to intervene in their divorce proceedings to have the court to adjudge who was the rightful owner, so that she could make proper payment. The firm of Ritter, Wynn & Carmichael were the then attorneys for Ida Belle Culpepper Green, and knew of the diligent and honest efforts of the complainant to discharge the mortgage debt. It was during the pendency of the appeal to this court in an attempt to have it determined to whom payment could be rightfully made that the firm of Ritter, Wynn & Carmichael undertook to foreclose the mortgage. At that time the firm well knew that the mortgagor was making diligent, persistent, and earnest effort to discharge the mortgage, and, in the light of these facts, it is clear a foreclosure of the mortgage was unnecessary to enforce the collection of the debt. Notwithstanding these efforts on the part of this complainant to discharge the mortgage debt, the property was advertised and sold. Was this a proper and legitimate exercise of the power of sale contained in the mortgage, or was it an attempt to pervert the power from its legitimate purpose, and to use it for the purpose of op-

pressing the debtor, or enabling the creditor to acquire the property himself? If it was a perversion or abuse of the power, the courts will set it aside. Struve v. Childs, 63 Ala. 473; 2 Jones on Mortgages, § 1801.

In the case of Castleman v. Knight, 215 Ala. 429, 110 So. 911, 912, the following equitable principle is quoted with approval: "'The legitimate purpose, for which the power to sell in this defendant's mortgage deed was given, was to secure him repayment of his mortgage money. If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill motive, to effect means and purposes of his own, or to serve the purposes of other individuals, the court considers that to be what it calls a fraud in the exercise of the power, because it is using the power for a purpose foreign to the legitimate purposes for which it was intended.' Struve v. Childs, 63 Ala. 473; Security Loan Ass'n v. Lake, 69 Ala. 456; Henderson, etc., Co. v. Wilson, 161 Ala. 504, 49 So. 845; McCalley v. Otey, 90 Ala. 302, 8 So. 157; Caldwell v. Caldwell, 166 Ala. 406, 52 So. 323, 139 Am. St. Rep. 48; Marsh v. Elba Bank & Trust Co., 207 Ala. 553, 93 So. 604; Wittmeier v. Tidwell, 147 Ala. 354, 40 So. 963."

One cannot read the averments of the bill in this cause and escape the conclusion that the complainant fully recognized the validity of the indebtedness secured by the mortgage; that she recognized fully the importance of paying the same, in order to save her property; that she was embarrassed and hindered in making payment by reason of the fact that two different persons claimed to be the rightful owners of the note and mortgage; that, in her perplexity, brought about by two adverse claimants, she attempted to intervene, but improperly, and therefore ineffectually, in a court proceeding to have the court adjudge the proper and rightful claimant; that, pending final efforts of complainant to obtain such determination, and with knowledge of the same on the part of Ritter, Wynn & Carmichael, the foreclosure was had; that she was ready, willing, anxious, and able to pay the debt; that, notwithstanding all this, Ritter, Wynn & Carmichael, then the holders of the note and mortgage, undertook to sell the property under the mortgage, and one of the holders appeared and bought the property.

We are fully persuaded that the averments of the amended bill make out a case for equitable relief against the foreclosure of the mortgage as for perversion and abuse of the power of sale.

 Again, if, as averred in the amended bill, the note and mortgage were placed with the law firm of Ritter, Wynn & Carmichael for collection, and this firm undertook to sell the property under the power of sale, and, without the knowledge of the mortgagee, one

678

of the firm became the purchaser of the property at the sale, on credit, as is also averred in the bill, such sale and purchase would be voidable at the timely election of the mortgagee. For as said by this court in the case of Adams v. Sayre, 70 Ala. 318: "The agent is not permitted to traffic with the subject-matter of his agency, without the consent of his principal, so as to reap a profit for himself. When he undertakes to manage in a particular matter for another, he impliedly undertakes not to manage for himself. It is contrary to well-established principles of equity, to permit an agent to purchase an interest in property when he has any duty devolved on him inconsistent with the character of a purchase." Good faith and loyalty alike require that the agent authorized to sell his principal's property must act in so doing solely for his principal's interest. And it is immaterial to the application of this principle that there was in fact "no fraud or unfairness on the part of the agent, or that the sale was at public auction, or that the agent gave a full and valuable consideration for the property." 2 Corpus Juris, 701, 702, and authorities cited in notes thereto.

The bill as amended not only avers that the law firm of Ritter, Wynn & Carmichael were in effect the agents of Ida Belle Culpepper Greene to collect the note and mortgage, and authorized to sell the property to enforce the collection, but it also avers that this firm, instead of selling the property for cash, sold the same on credit to a member of that firm, and that their principal had repudiated the sale and purchase, and had so advised the mortgagor, the complainant.

■ It cannot be doubted that, if the agent, without the knowledge of his principal, purchased the property at the foreclosure sale, on credit, and the principal seasonably elected to declare the sale and purchase void, and so advised the mortgagor, the latter would be entitled, upon such election being made, to exercise her equitable right of redemption by paying the amount then due and owing on the mortgage. And this would certainly be true if the mortgagor had interposed no objection to the action of the mortgagee in disaffirming the alleged unauthorized action of her agent in purchasing the property.

There appears also another ground for holding the foreclosure proceedings irregular. The published notice of sale of the property under the mortgage states that the sale would be held on May 17, 1928, while it appears from the deed made on foreclosure that the sale was actually had on May 18, 1928.

■ Of course, we have dealt solely with the averments of the bill, which are admitted to be true by the demurrer, and on these averments the complainant states a case entitling her to exercise the equitable right of redemption. The court erred, therefore, in sustaining the demurrer addressed to the bill as a whole, and to that phase of it which asserted her equitable right to redeem the property and in dismissing the bill of complaint. The demurrer addressed to the bill as a whole should have been overruled, as well as those grounds of demurrer which challenged the sufficiency of the bill as one to exercise the equitable right of redemption.

■ With reference to that phase of the bill in which the complainant seeks to exercise the statutory right of redemption, in the event it should be held that she was not entitled to exercise the equitable right of redemption, we need only to observe that the equitable right of redemption and the statutory right of redemption cannot coexist at the same time, in the same person, and as to the same mortgage and property. The statutory right of redemption springs into existence by force of the statute only after the equitable right of redemption has been cut off by a valid foreclosure. The assertion of the statutory right of redemption presupposes, therefore, a valid foreclosure. This being true, the bill as one to enforce the statutory right of redemption was defective in two particulars: First, in not averring a valid tender was made to the purchaser, within the proper period, of the purchase money, and interest thereon at the statutory rate, and all other lawful charges, and in failing to bring the tender money into court. The excuse averred for not doing so, in our opinion, was insufficient. J. M. Phillips v. Annie H. Long, 224 Ala. 64, 139 So. 238; Davis v. Ashburn, 224 Ala. 572, 141 So. 226; Wootten v. Vaughn, 202 Ala. 684, 81 So. 660; Slaughter v. Webb, 205 Ala. 334, 87 So. 854; Foerster v. Swift, 216 Ala. 228, 113 So. 31; Johnson v. Williams, 212 Ala. 319, 102 So. 527.

■ Second, in not averring that possession was delivered to the purchaser on demand, or in not negativing that a demand for possession was made, or in not averring some sufficient excuse for not surrendering possession, if demanded. Hart v. Jackson Street Church, 224 Ala. 64, 139 So. 88; Code, § 10143; Stocks v. Young, 67 Ala. 341; Baker v. Burdeshaw, 132 Ala. 166, 31 So. 497; Snow v. Montesano Land Co., 206 Ala. 310, 89 So. 719.

■■ While one or more grounds of demurrer take the point that the bill as last amended constitutes "a radical departure from the case made by the original bill," and also from that made by the bill as previously amended, we are of the opinion there is no merit in the contention. Our statute of amendment is broad and liberal, and its administration has been, and must continue to be, characterized by the same liberal spirit and beneficent purpose that inspired its adoption. Ex parte Delpey, 188 Ala. 449, 66 So. 22; Pitts v. Powledge, 56 Ala. 147; Alabama

Terminal Co. v. Hall & Farley, 152 Ala. 269, 44 So. 592.

We are also at the conclusion that the amendment was properly allowed, and related back to the filing of the original bill, and which was filed within two years after the attempted foreclosure.

It follows that the decree appealed from will be, and is, reversed, and a decree here rendered overruling the demurrer addressed to the bill as a whole, and to that phase of the bill which seeks to enforce the equitable right of redemption.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.