165 So. 586

**FIRST NAT. BANK OF OPP v. BOLES et al.**

4 Div. 842.

Supreme Court of Alabama.

Jan. 23, 1936.

474

Mulkey & Mulkey, of Geneva, for appellant.

P. B. Traweek, of Elba, for appellees.

KNIGHT, Justice.

Bill by Mrs. M. J. Boles and Beulah Boles, exhibited in the circuit court of Covington county, in equity, against the First National Bank of Opp. The bill, as originally filed, seeks to require the respondent to "set forth and propound in detail its accounts which were secured by the mortgage of J. M. Boles and wife, dated December 14, 1926, to the bank," and an accounting

by the bank of the rents, incomes, and profits accruing to it from the lands conveyed by the mortgage; prays that all usurious charges and other erroneous items be eliminated, to the end that the true condition of the accounts be judicially determined, and if any balance be found due and unpaid on the mortgage indebtedness that the court permit complainants to pay same, and redeem the lands conveyed by the mortgage.

The complainants further pray: "That the status and condition of the title to said lands may be established and judicially declared, and that said mortgage and pretended foreclosure thereof may be canceled of record and held for naught, under such orders as to the court shall appear just and equitable."

There was demurrer to the bill as first filed, and this demurrer was, upon submission, sustained. Thereupon, the complainants amended the bill, and to the bill as then amended the respondent again demurred, and this demurrer was sustained by the court.

After the demurrer was sustained to the bill as first amended, the complainants again amended the bill, and to the bill as last amended the respondent again demurred. This demurrer was overruled by the court, and from this decree the present appeal is prosecuted.

The prayer of the first amendment is in the following language: "Wherefore, said complainants pray that the foregoing may be considered as a part of the bill of complaint in this cause, or as an amendment thereto in lieu of paragraphs 8 and 9 of the original bill; that relief may be granted to them by your honor in accordance with the prayer of the original bill, either by cancellation of the foreclosure deed, or by setting aside the foreclosure, stating the mortgage account, and permitting the complainants to redeem the lands in the mortgage, and for general relief as heretofore prayed for."

It appears from the bill that J. M. Boles (now deceased) and his wife, Mrs. M. J. Boles, one of the complainants, executed to the First National Bank of Opp a number of mortgages during a period of years; that in each year there was an unpaid balance carried into the mortgage of the succeeding year, and that the last and final mortgage was executed on December 14, 1928; that the unpaid balance under the mortgage executed during the preceding year was carried into this last-mentioned mortgage.

It is charged that the respondent bank knowingly and intentionally charged the mortgagors usurious interest on the indebtedness secured by said mortgages, in this wise, that while the mortgages only ran for a part of the year, the mortgagee charged the mortgagors interest in each instance for a full year at 8 per cent. per annum. The amount of usurious interest charged does not otherwise appear in the bill, nor is it averred that the amount of the usurious interest charged and paid was unknown to complainants.

In paragraph 5 of the original bill the complainants attempt to aver that the mortgage debt had been fully paid, but in the last amendment to the bill this averment is stricken, and with respect to the striking of this averment the following statement appears: "Complainants, with leave of the court, hereby strike out from the original bill the averment that the mortgage debt is fully paid (end of paragraph 5), because they kept no records themselves, and the decedent, J. M. Boles, kept none, but trusted the respondent herein to keep all the records, so that these complainants cannot say just what amount is rightfully due under the mortgage, but respondent contended at one time, and stated to complainants, that there was only a balance of $125 still unpaid on the mortgage, or debts."

The bill is filed by Mrs. Boles, the widow of the deceased mortgagor, and by Beulah Boles, a daughter of said decedent.

It is averred that "there was no administration on the estate of J. M. Boles, or, if there was, it has long since been closed."

The averments of paragraph 7 and 8, as amended, of the bill appear in the report of the case.

In the last amendment to the bill, the complainants bring forward the mortgage of J. M. Boles and wife, and the foreclosure deed, and make the same exhibits to the bill.

From these exhibits it appears that the mortgage was foreclosed by public sale of the lands had on July 16, 1929, at the front door of the First National Bank of Opp, recited in the foreclosure deed to be a public place in the town of Opp; that notice of the sale was given by posting notice in three public places in the town of Opp, Covington county, Ala.

■ We are persuaded that in that aspect of the bill which seeks the cancellation of the mortgage and the foreclosure

deed made thereunder the bill as amended contains equity, and therefore the demurrers to the bill as a whole, and to this aspect thereof, were properly overruled. Wood v. Estes, 224 Ala. 140, 139 So. 331; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A.L.R. 1413.

In paragraph 8 of the bill as last amended every fact is averred which is necessary to confer upon the court jurisdiction to cancel the deed and mortgage as clouds upon title of complainants, and to quiet the title to the lands in question.

In the case of Kelly v. Martin, 107 Ala. 479, 18 So. 132, it was said: "Notwithstanding section 1870 of the Code provides that 'the payment of a mortgage debt, whether the mortgage is of real or personal property, divests the title passing by the mortgage,' we are of opinion that the mortgagor of lands, *in possession, having fully paid the secured debt,* though possibly denied the right of a bill to redeem, as such, is entitled to go into a court of equity, and have the *payment established,* and the mortgage delivered up and canceled, as a cloud upon his title. The payment resting in parol, the evidence of it may be readily lost by the death, removal, or failure of recollection of witnesses, or other causes, while the mortgage outstanding contains within itself enduring evidence, prima facie, that the legal title has passed to the mortgagee, and still remains in him. It is manifest, therefore, that the mortgagor is subjected to the danger of the loss of his estate, unless some remedy is afforded him of establishing the payment, and withdrawing from the mortgagee the instrument of such possible loss, with which he is armed. There is no other adequate remedy than a resort to a court of equity. See Rea v. Longstreet, 54 Ala. 291; Lehman v. Shook, 69 Ala. 486; Jones v. De Graffenreid, 60 Ala. 145; Morgan v. Lehman, 92 Ala. 440, 9 So. 314."

In line with the above holding is our more recent case of Bank of Henry v. Elkins, 165 Ala. 628, 51 So. 821, in which we held that courts of equity have jurisdiction to cancel and remove a specially described cloud upon the complainant's title, when the owner is in possession, and when the evidence of the alleged cloud is not void on its face, and extrinsic evidence is necessary to show its invalidity. And to the same effect is the still more recent holding in the case of Wood v. Estes, supra.

As a bill to cancel the mortgage, and the foreclosure deed as clouds upon the title of the grantors, upon the asserted equity that the mortgage was fully paid when the attempted foreclosure was had, we think it sufficient as against respondent's stated ground of demurrer, and the court properly overruled the demurrer to this aspect of the bill.

The equity to have the mortgage purged of the alleged usurious interest is dependent, of course, upon whether there was a valid foreclosure of the mortgage; or if there was in fact a valid foreclosure, whether the alleged conduct of the respondent as averred in the bill, and especially in paragraph 7, was such as to show that the First National Bank of Opp, mortgagee-purchaser, abandoned the foreclosure, or waived its right as a purchaser at the foreclosure sale, and made a binding election to treat the mortgage as their sole source of title and interest; or whether the conduct of the bank in entering into the alleged agreement, and collecting the rents thereafter and thereunder, was such as to work an equitable estoppel against the bank to assert its title to the land under the foreclosure deed.

If there was a valid foreclosure of the mortgage and the contract thus became executed, the fact that usurious interest was charged cannot invalidate the sale. Jones v. Meriwether et al., 203 Ala. 155, 82 So. 185; Alford v. Southern Building & Loan Ass'n, 228 Ala. 412, 153 So. 864; Alabama Cash Credit Corporation v. Bartlett et al., 225 Ala. 641, 144 So. 808.

In any event, it was incumbent upon the complainant to state distinctly and correctly the terms of the usurious agreement, *and the amount of the usurious interest paid.* Bernheimer v. Gray, 201 Ala. 462, 78 So. 840; Davis v. Ashburn et al., 224 Ala. 572, 141 So. 226; Bradford v. Daniel, 65 Ala. 133; Security Loan Ass'n v. Lake, 69 Ala. 456; Masterson v. Grubbs, 70 Ala. 406; Burns v. Campbell, 71 Ala. 271; Kilpatrick v. Henson, 81 Ala. 464, 1 So. 188; Woodall v. Kelly, 85 Ala. 368, 5 So. 164, 7 Am.St.Rep. 57; Moses v. Home Building & Loan Ass'n, 100 Ala. 465, 467, 14 So. 412, 413.

We find no averment in the bill relieving the complainants from the necessity of averring the amount of the alleged usurious interest paid, or that the amount was unknown to the complainants.

In this aspect, if for no other reason, the bill was defective and subject to respondent's apt ground of demurrer in failing to state the amount of the usurious interest paid on the indebtedness. The demurrer to this feature of the bill should have been sustained.

It is insisted by appellee that the alleged foreclosure was invalid for the reason that the mortgage, as written, must be regarded as being silent as to the place of sale, in event there was default in the payment of the secured debt, and being silent as to the place of sale, a valid sale, to be efficacious to cut off the equity of redemption, could only be made at the courthouse door of the county wherein the land is situated, for cash, to the highest bidder, after thirty days' notice of the time, place, and terms of sale by publishing such notice once a week for four consecutive weeks in a newspaper published in the county wherein said lands or the property in said mortgage or deed of trust are situated.

Of course, if appellees' contention is sound, then it would follow necessarily that there had been no foreclosure, and the equity of redemption still exists in the complainants, and they would be entitled to assert and enforce their equity of redemption in the property.

The mortgage brought forward in the amended bill authorizes the mortgagee to sell the mortgaged real estate, in the event of default in the payment of the secured debt, at maturity, "by giving notice of said sale by posting in three public places in the town of Opp, Covington County, Alabama, for a period of five days, which sale shall take place in the town of Opp, Covington County, Alabama, and shall be for cash."

Sections 9011 and 9018 of the Code, which were in effect at the time the mortgage was executed, provide:

"9011. If a deed of trust or mortgage, with power of sale, be silent as to the place or terms of sale, or as to the character or mode of notice, a sale may be made at the courthouse door of the county wherein the land is situated, after condition broken, for cash to the highest bidder, after thirty days' notice of the time, place and terms of sale by publishing such notice once a week for four consecutive weeks in a newspaper published in the county wherein said lands or property in said mortgage or deed of trust are situated."

"9018. All sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary."

In the case of Cotton v. First National Bank of Opp, 228 Ala. 311, 153 So. 225, the question now presented, was left undecided, as a decision of that question was unnecessary in the determination of that case. It is now before us, and the question must be determined.

While the mortgage does not specify that the sale shall be made at any particular place in the town of Opp, it does specify that it shall take place in the town of ·Opp No one, we take it, will doubt for a moment that it was within the power of the contracting parties to fix a place for the sale to occur, and the notice that should be given. Nor will any one doubt, in the absence of a statute forbidding it, the right of parties, sui juris, to contract that the sale *shall not* take place at a given place.

It is certain that the parties to this mortgage, charged with knowledge of all that is written in sections 9011 and 9018, did stipulate, in legal effect, that the sale should not occur at Andalusia, and that in lieu of advertisement in a newspaper, posted notice of the sale for five days should be given.

Can it be said, then, that the mortgage was silent as to the place of sale, when the parties have stipulated that it should occur in Opp, and thereby evidence an intention it should not occur at Andalusia? For aught appearing, the parties had a sufficient reason for excluding Andalusia, the county site, as a proper place for the sale.

The Supreme Court of Mississippi in construing a section of the Mississippi Code of 1892, § 2484, which is very similar to our Code, § 9011, held that this provision did not hinder the grantor from authorizing the donee of a power in a mortgage or deed of trust to designate the *time, place,* and terms of sale. It held that "the statute comes in when the instrument is silent on the subject." And that "empowering one to name time, place, and terms is just as if the time, place, and terms were inserted in the instrument by the maker, for, done by authority conferred by him, it is as if done by himself." Goodman v. Durant Bldg. & Loan Ass'n, 71 Miss. 310, 14 So. 146, 148.

The same court, in the case of Williams v. Dreyfus, 79 Miss. 245, 30 So. 633, observed: "The trust deed provides that 'if default is made in payment the trustee

shall take possession of said property, and having given thirty days' notice of the time, place, and terms of sale, by posting,' etc., 'sell said property for cash at public auction at Jackson or any suitable place.' We conclude, and so hold, that the instrument is not 'silent as to the place and terms of sale and mode of advertising,' and that therefore Code [1892], § 2484, providing that in case of such silence the sale shall be upon the notice and at the time and place of sheriffs' sales, does not apply. We think that under its terms the deed necessarily gives the power to the trustee to determine these details of the execution of the trust."

Having selected Opp as the locality of the sale, the selection of the particular public place in the town of Opp, where the sale should be had, was left to the reasonable and prudent discretion of the grantee of the power. Pertinent in this connection is our holding in the case of State Bank of Elberta v. Peterson, 226 Ala. 13, 145 So. 154, 155, where it was said: "It seems also to be the settled construction of a power, that if its provisions do not specify a place of sale, and none is then provided by law, the selection of a place is left to the reasonable and prudent discretion of the grantee of the power. 41 Corpus Juris, 967, cases in note 8; McClendon v. Equitable Mortgage Co., 122 Ala. 384, 391, 25 So. 30. So that the right to exercise such prudent discretion is thereby as much a part of the contract as if written in it."

We are of the opinion, and so hold, that the donee of the power, the said First National Bank of Opp, had the right, in the exercise of a reasonable and prudent discretion, to select the specific public place in the town of Opp where it would make said sale.

We therefore conclude that the bill in the aspect that seeks relief upon the theory that there was no valid foreclosure of the mortgage, because the sale was not had after due and legal advertisement at the courthouse door of Covington county, was subject to the respondent's demurrer. The court, therefore, erred in overruling the demurrer addressed to this feature of the bill. Aside from conclusions of the pleader, the facts averred wholly fail to show that the respondent, mortgagee, perverted the power of sale in the mortgage to accomplish means and purposes of his own from any ill motive, or to serve the purpose of any other individual, or to oppress the debtor, or for any purpose foreign to the legitimate purpose for which it was intended. In truth and fact, the bill wholly fails to show any fraud, legal or constructive, in the execution of the power of sale, as averred, by way of conclusion only, in the bill. In this respect, the case is wholly different from the case of Moseley v. Ritter, 226 Ala. 673, 148 So. 139. The demurrer to this feature of the bill should have been sustained.

This brings us to a consideration of that phase of the bill which seeks, in effect, to set up an estoppel against the respondent to assert its right under the foreclosure deed, or to insist upon the foreclosure of the mortgage as cutting off complainants' equity of redemption. Or, if not an estoppel, that the respondent's conduct, in entering upon the lands, with the understanding and agreement with the complainants, that it should, and would, collect the yearly rents accruing therefrom, and apply the same, after paying certain installments due annually to the Federal Land Bank and taxes, to the payment of the mortgage debt, amounted in legal effect, to a waiver or abandonment by respondent of the foreclosure of the mortgage.

In brief of counsel for appellee much is said about the trust relationship that exists between mortgagee and mortgagor. It is quite true that the mortgagee does occupy such a relationship, and owes to the mortgagor the utmost good faith in dealing with the mortgage property, which is, in a way, impressed with a trust for the payment of the secured debt. This principle was quite recently pointed out and emphasized in our case of Moseley v. Ritter, 226 Ala. 673, 148 So. 139; but, of course, there is a time when that relation ceases, and that time arrives when the mortgage property is fairly sold, in all respects as provided in the mortgage, whether the purchaser be the mortgagee, who buys under authority conferred in the mortgage, or is some third person, and the proceeds applied in accordance with the terms of the mortgage. The purchaser then becomes the owner of the property, unimpeachable even for waste, at least until a valid tender is made for redemption. Goodwin et al. v. Donohue et al., 229 Ala. 66, 155 So. 587. So, then, the question whether the respondent is estopped from asserting his purchase of the property at the foreclosure sale, or whether he waived or abandoned the foreclosure proceedings, must be determined otherwise than upon the theory of a trust.

The essential facts upon which complainants rely, as creating an estoppel or waiver or abandonment, appear, in the main, in paragraph 7 of the bill. If these averments, taken in connection with the other averments of the bill, are true, and we must so treat them on demurrer, the respondent entered upon the lands, with the consent and by the permission of the complainants, upon the understanding that the respondent would collect the rents and apply the same according to the agreement under which it entered. Under this agreement, the respondent continued in possession of the land for five years, long after the statutory period of redemption had elapsed (Code 1923, § 10140). Having remained in possession for five years under said agreement, and having collected large sums of money, due under the agreement to be applied to the mortgage debt, will the respondent be allowed to insist upon the foreclosure of the mortgage at a time when to do so would defeat any right of the complainants to assert and enforce their statutory right of redemption? To so hold, to our mind, would be inequitable.

The respondent could, no doubt, have recovered the possession of the property, by proper action, but it elected to take another course. Instead of resorting to an action at law, the respondent elected to enter into an agreement with complainants by which it secured the possession of the property, and it is now estopped to repudiate the agreement, when the inevitable effect of such repudiation would be to deprive the complainants of the valuable right of asserting statutory redemption.

The question here presented is not one of divesting title to land by estoppel in pais, but the question is rather whether the respondent will be permitted to assert his title to defeat a legal right in the complainants, which legal right was not timely asserted by reason of a positive agreement on the part of the respondent that it would so act as to make the assertion of complainants' legal right unnecessary.

The estoppel here invoked is not a legal estoppel but rather an equitable one. There is quite a distinction between the two classes of estoppel. "Legal estoppel excludes evidence of the truth and the equity of the particular case to support a strict rule of law on grounds of public policy. Equitable estoppel is admitted on exactly the opposite ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth." 21 Corpus Juris, § 119, pp. 1116 and 1117.

Again in 21 Corpus Juris, § 120, pp. 1117 and 1118, it is said: " 'An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth.' The doctrine is derived from courts of equity, and is much more than a rule of evidence; it establishes rights; it determines remedies. It is based upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, *when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence.* The doctrine of estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged." (Italics supplied.)

In the case of Hubbard et al. v. Slavens et al., 218 Mo. 598–619, 117 S.W. 1104, it was observed: "They (estoppels) stand on principles of refined ethics and were always ahead of equity jurisdiction."

We are of the opinion that the court properly overruled respondent's demurrer to this phase of the bill.

It is our conclusion that the bill in some of its aspects, as indicated in this opinion, contained equity, and the demurrer to the bill as a whole was properly overruled. In some of its aspects, which are indicated herein, the bill was defective, and the demurrer thereto should have been sustained.

It follows, therefore, that the decree appealed from will be affirmed in part, and in part reversed and rendered, and the cause remanded.

Affirmed in part, reversed and rendered in part, and remanded.

THOMAS, BROWN, and FOSTER, JJ., concur.