MAIN, Justice.
The Town of Boligee (“Boligee”) appeals from the judgment of the Greene Circuit Court denying Boligee relief on its complaint seeking a judgment declaring certain actions undertaken by the Greene County Water and Sewer Authority (“the Authority”) not to have been properly authorized.

Factual and Procedural Background

On May 30, 2008, Boligee filed a complaint in the trial court seeking a judgment declaring that the Authority’s actions in excavating, cutting trees, and digging and installing water pipelines on Boligee’s right-of-way were unlawful because those actions were undertaken without first obtaining Boligee’s permission. Boligee further asserted tort claims of trespass, unlawful cutting, and conspiracy based on the above allegations. In its answer, the Authority denied any wrongdoing and filed a counterclaim seeking damages pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975 (“ALAA”). After receiving additional pleadings from the parties, the trial court heard evidence ore tenus and then took the matter under advisement. The evidence generally indicated that Boligee, which operated its own water and sewer system, and the Authority had discussed a proposal involving the Boligee water system, but were unable to reach any agreement regarding the proposal, and that during the same time frame the then mayor of Boligee signed a contract allowing the Authority to use a right-of-way inside the municipal limits of Boligee to construct a pipeline to supply water to customers of the Authority living outside the Boligee municipal limits and outside the service area of Boligee’s water system.
The evidence indicated that, at the March 3, 2003, meeting of the Boligee Town Council, a representative of the Authority presented a proposal to the town council that would allow the Authority to run a water pipeline through Boligee to provide water for all citizens of Boligee. Pursuant to the proposal, the Authority was to assume all debt for repairing the water tank and installing the new pipeline; the Authority was to receive 60 percent of the profits from the water service and Boligee was to receive 40 percent of the profits from the water service; and Boli-gee was to retain ownership of the water system, as improved by the new addition. The town council passed a motion “agreeing] with the general plan of the presentation with the necessary working out of the details later.”
The Boligee water and sewer system was discussed at several subsequent meetings of the town council. The minutes from the April 7, 2003, meeting of the Boligee Town Council indicated as follows:
*1168 “The Mayor reported to the Council that the problem is that the City of Eutaw took over the system. ADEM [Alabama Department of Environmental Management] is looking to Eutaw to make repairs to the tank and other problems. Boligee wants to keep the system. Eu-taw wants Boligee to decide what we’re going to do. Tonight we have Booker Cook, John Stevens, and Dickey Odom and Vincent Atkins to share with us about the Greene County water system and what they can do for the Town of Boligee.”
Minutes from an April 14, 2003, meeting of the town council indicated that there were additional discussions about the Authority’s proposal but that no decision was reached. Minutes from the May 6, 2003, meeting of the town council indicated that “[the] Mayor shared with the Council that the City of Eutaw is interested in getting the water system and doing the work on the tank and take over the debt. No action.” Minutes from the June 2, 2003, meeting of the town council indicated as follows:
“Mayor Bonny Olayiwola shared with the Council that the problem with the system is that we can’t maintain it. What are we going to do? Honorable Jeanette Campbell said that the attorneys for the City of Eutaw and Greene County Water Authority along with our attorneys have come together to discuss the system. [Boligee Town] Attorney Booker Forte said the Town should see who was going to give the money back to the town to see which one is going to help the Town of Boligee, what can they offer to the town? What is more important to the town or the county as a whole? Will there be any royalty payments for the system? After 30 years, will the town be able to get the system back and will the town have the option to buy the system back? The Honorable Johnny Burton said to them — said to get them together. The Council agrees to Mayor Bonny, Vincent Eloise, attorneys come into a meeting together to discuss what could be done and what is best for the Town of Boligee.”
Testimony at trial further indicated that the town council ultimately decided not to enter into the proposed agreement with the Authority. Then, on June 18, 2003, the mayor of Boligee signed a written agreement permitting the Authority to construct and maintain a waterline along the right-of-way of U.S. Highway 11 and County Road 20 inside of the town limits of Boligee, for purposes of providing water to customers living outside the Boligee town limits and outside the service area of the Boligee water system.
Mayor Bonny Olayiwola testified before the trial court that she was mayor from 1996-2004 and again from November 2008 through the time of trial. She stated that she believed that as the chief executive officer of the town she had the authority to enter into the agreement with the Authority on behalf of Boligee. Mayor Olayiwo-la’s testimony indicated that she did not give the Authority any basis on which to believe that she did not have the requisite authority to sign the agreement on behalf of Boligee. In response to a question, she further testified that at no point during the period when she saw the Authority’s crews working on County Road 20 within the town limits of Boligee did she advise them that they were on Boligee’s right-of-way without permission, nor did she make any such statements to the town council.
Walter Taylor testified that he was a member of the town council from 1998-2004 and that he served as mayor of Boli-gee from 2004-2008. He stated that he did not recall ever seeing a written contract from the Authority and that nothing *1169 in the minutes of the town council meetings indicated that the council had approved the agreement signed by Mayor Olayiwola.
Taylor testified on cross-examination that he lived on County Road 20 approximately a mile and a half from where it intersected with U.S. Highway 11 and that he traveled both roads frequently. According to Taylor, he first noticed construction on U.S. Highway 11 and later on County Road 20. He stated that he did not stop and ask under what authority was the work being performed or raise any concerns before the town council regarding the legality of the work. Taylor stated that “it was brought up with some other issues” at a town council meeting, but that “was pretty much after it was completed, the construction was completed. During the latter part of the construction.” On redirect examination, the following exchange occurred:
“[Counsel for Boligee]: Mr. Taylor, you were asked by [the Authority] if you made any efforts to stop the installation of the water line as it was being installed in Boligee. Do you remember that question?
“[Taylor]: Yes, sir.
“[Counsel for Boligee]: Is there any reason you made no efforts to stop the water line?
“[Taylor]: Actually, after it was recognized, I think we had a meeting. It was when it was observed. We had a Council meeting and you were riding this— well, you asked as you were coming [to the] meeting about whether we knew about the construction on Highway 11. I mean on County Road 20. And at that point, you said that you would handle— get with them to handle whatever situations.” [1]
John Stevens testified that he was employed by Centel Engineering as the project engineer for the Authority’s water-system project. Stevens read into the record an April 11, 2007, e-mail sent to him by the town attorney for Boligee, in which the attorney asserted that the minutes of the town council meetings did not reflect that the council had authorized the mayor to sign the complained-of agreement on behalf of Boligee. The e-mail further asserted that the only discussions in the minutes of the Boligee town council regarding the Authority pertained to the Authority’s proposal for different renovations and service to Boligee’s water system that were unrelated to the agreement signed by Mayor Olayiwola. The e-mail further indicated that Boligee’s attorney needed to speak with Stevens or a representative of the Authority unless someone had minutes of the town council meetings that reflected that the town council had authorized May- or Olayiwola to sign the written agreement or that the town council had agreed to the terms of the written agreement or a copy *1170 of an ordinance published in accordance with § 11-45-8, Ala.Code 1975.
Stevens testified that he did not recall whether he notified the Authority about the e-mail. He stated that he did have discussions with the Authority’s manager and its board of directors about the questions raised regarding the water-system project. According to Stevens:
“I told them that we had a signed franchise agreement that USDA [United States Department of Agriculture] approved and that [Boligee’s attorney] had called and said it was not approved by the Council, Town Council of Boligee and that according to USDA rules we didn’t have to have it approved by the Town Council of Boligee. The approval of the Mayor was all that was necessary. We weren’t aware that the Town Council of Boligee had not approved it until [Boligee’s attorney] brought it to our attention, but with the USDA rules we did not have to have the Town Council approval. Anything we did, we had to give the Town Council minutes and show them to USDA. In this case, we did not have to have that.”
Vincent Atkins testified that he was the manager and chief operating officer of the Authority. Atkins stated that he understood some concerns were brought to the attention of the United States Department of Agriculture (“the USDA”) regarding the agreement but that the USDA had indicated to the Authority that it was satisfied with the agreement, and the USDA’s approval was all Atkins believed he needed. Atkins indicated that Boligee did not contact the Authority about any concerns. When asked whether he understood that Boligee communicated its concerns to Stevens, Atkins stated that he believed that the USDA had contacted Stevens. Atkins further testified that he had provided the mayor with a copy of the agreement and that he had provided the town clerk with a copy outside of a regular meeting of the town council. According to Atkins, the purpose of the work proposed by the complained-of agreement signed by Mayor Olayiwola was separate and unrelated to the purpose of the work in the proposal that was presented to the town council and discussed at several council meetings. Atkins further testified that he and Boligee’s attorney had discussions in 2007 about the water system. Atkins denied that the subject matter of those discussions was that the Authority had laid waterlines without permission from the town council and stated instead that the meetings were about operating the Boligee water system or about operations and maintenance problems of that system. Atkins also testified as to a September 26, 2007, e-mail to him from Boligee’s attorney. Atkins stated that the construction on the waterline would have been nearly completed at that point. Atkins testified that the e-mail from Boligee’s attorney provided a proposal for the Authority to operate the Boligee water system and stated that the attorney “assume[d] Boligee will purchase water [for] the system from the Authority and considering Boligee’s assistance in the Authority expansion, [Boligee’s attorney] hope[d] the charge is accommodating.” Atkins stated that he understood the “assistance” referenced in the e-mail to be Boligee’s permitting the Authority to lay the waterline inside the town limits of Boligee to service the unincorporated areas of the county.
The trial court issued a judgment declaring that the mayor had the authority to bind Boligee to the complained-of agreement. The trial court also held that, because of the above finding, Boligee’s tort claims against the Authority were moot. Finally, the trial court found that there was substantial justification for Boligee’s *1171 initiating the action and, therefore, denied the Authority’s counterclaim filed pursuant to the ALAA.[2] This appeal followed.

Standard of Review

“Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’ Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[Wjhere the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Aa.2010).

Mayor Olayiwola’s Authority to Enter into the Agreement

The trial court concluded that, pursuant to §§ 11-43D-14 and 11A7-5, Aa. Code 1975, Mayor Olayiwola had the authority to bind Boligee to the agreement with the Authority. Section 11-47-5 provides:
“Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town and all obligations for the payment of money by the municipality, except for bonds and interest coupons, shall be attested by the clerk.”
Section 11-43D-14 provides, in pertinent part:
“The mayor shall be the chief executive officer, and shall have general supervision and control of all other officers, employees, and affairs of the city, which shall include the management of the public utilities, either owned and *1172 operated by the city or operated by private corporations under contracts with the city.”
However, § 11-43D-1 et seq., Ala.Code 1975, is applicable only to Class 5 municipalities operating under a consent decree issued by a United States district court as specified in § 11^43D-1. Because Boligee is a Class 8 municipality, the trial court’s reliance on § 11^43D-14 was misplaced. Section 11-43D-14 has no applicability here. The statutes applicable in this case are discussed below.
Section 11-43-81, Ala.Code 1975, provides, in pertinent part, that “[t]he mayor shall be the chief executive officer, and shall have general supervision and control of all other officers and the affairs of the city or town, except as otherwise provided in this title.” Section 11-43-83, Ala.Code 1975, provides as follows:
“The mayor shall see that all contracts with the town or city are faithfully kept or performed. He shall execute all deeds and contracts and bonds required in judicial proceedings for and on behalf of the city or town and no sureties shall be required on such bond. He shall perform such other executive duties, in addition to those prescribed in this article, as may be required of him by the council.”
We note that § 11-88-14, Ala. Code 1975, allows, in pertinent part, for entities such as the Authority to use the rights-of-way of public roads “subject only to the necessity of obtaining the municipal consent required by Section 220 of the Constitution of Alabama of 1901.” Section 220 of the Constitution of Alabama of 1901, provides:
“No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town, or village.”
With regard to the authority of a city or town council, the Alabama Legislature has provided:
“All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance. The council shall perform the duties required by this title and other applicable provisions of law.”
§ 11-43-43, Ala.Code 1975. Further, “[ejxcept as otherwise provided in this title, the council shall have the management and control of the finances and all of the property, real and personal, belonging to the city or town.” § 11-43-56, Ala.Code 1975.
It is undisputed that the Boligee town council never authorized the agreement at issue. There is no evidence indicating that the parameters of the agreement were ever discussed at the town council meetings. The town council’s management and control over the real property, as described in § 11^43-56, is controlling, and nothing in the language delegating certain authority to the mayor trumps that responsibility. Although a mayor is authorized to enter into and to execute the type of contract at issue in this case, he or she is allowed to do so only to the extent directed by the city or town council. The evidence in this case establishes that in this case Mayor Olayiwola did not possess the authority to enter into the agreement with the Authority.

Applicability of the Doctrine of Estoppel

“ ‘[Although the doctrine of es-toppel is rarely applied against a municipal corporation, it may be applied in a proper case when justice and fair play demand it *1173 and where there has been a misrepresentation or concealment of material fact.’ ” Peterson v. City of Abbeville, 1 So.3d 38, 44 (Ala.2008) (quoting City of Foley v. McLeod, 709 So.2d 471, 474 (Ala.1998)).
The trial court found in its final order, in pertinent part:
“Because members of the governing body of Boligee witnessed the construction of the water line as it progressed through the town limits of Bo-ligee yet took no action (either in the form of notifying [the Authority] of its objections(s), or informing a court of competent jurisdiction to seek injunc-tive relief), their actions and conduct, reasonably interpreted, would have certainly caused [the Authority] to believe that Boligee had given authority to [Mayor] Olayiwola to act on its behalf.
“Notwithstanding the foregoing, this Court further finds that Boligee, due to its inaction upon clearly witnessing the construction to its completion, is es-topped from now denying the validity of the agreement executed by Mayor Olayi-wola. City of Guntersville v. Aired, 495 So.2d 566 (Ala.1986)
There is no evidence in the record indicating that members of the governing body of Boligee misrepresented or concealed any material fact. Rather, the evidence established that Boligee, through its attorney, communicated its concerns regarding the lack of the town council’s approval but that the project engineer and the Authority concluded that the approval of the town council was not required for the project. Thus, despite the trial court’s conclusion to the contrary, Boligee is not estopped from denying the validity of the June 18, 2003, agreement.

Conclusion

For the above-stated reasons, the trial court’s judgment is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, BOLIN, PARKER, SHAW, and WISE, JJ., concur.
WOODALL, J., concurs specially.
MURDOCK, J., concurs in the result.
COBB, C.J., dissents.

. Booker Forte, Jr., represented Boligee at trial. Forte also apparently served as Boli-gee’s attorney during the events being testified to. A number of questions posed to different witnesses evidenced involvement by Forte in the events and were asked or answered referencing Forte in the first person (e.g., minutes from a town council meeting describing Forte’s recommending that Boli-gee should examine the details of proposals from the Authority and from the City of Eu-taw to decide which would be more beneficial to Boligee; Taylor's testimony that "you” said; the project engineer John Stevens’s testimony regarding "an email to me from you”; and Vincent Atkins’s testimony, as former manager/operator of the Authority, regarding conversations in 2007 and a September 26, 2007, e-mail from Forte to Atkins about the water system and/or waterlines). On at least one instance at trial Boligee objected to a question as privileged discussions between the town council and its attorney, i.e., Forte.

. The Authority has not raised on appeal any challenge to the trial court's ruling on its ALAA counterclaim.