DONALDSON, Judge.
Pursuant § 35-8A-103(7), Ala.Code 1975, part of the Aabama Uniform Condominium Act of 1991, § 35-8A-101 et seq., Aa.Code 1975 (“the Act”), a condominium is defined as “[r]eal estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions.” In this case, we are asked to determine whether a conveyance of certain limited common elements of a condominium was proper under the Act and the declaration of condominium applicable to the pertinent real estate. Cecil R. Dorsett and Barbara B. Dorsett appeal from a judgment of the Jefferson Circuit Court (“the trial court”) declaring that Deepali Singla and Ish Singla are the rightful owners of certain limited common elements of a condominium. For the reasons explained below, we reverse the judgment and remand the cause to the trial court with instructions to enter a judgment consistent with this opinion.

Facts and Procedural History

Bristol Southside Condominium (“Bristol Southside” or “the condominium”), a condominium located in Birmingham consisting of 156 residential units, was formed on November 1, 2006, when Bristol South-side, GP, the condominium developer, recorded the declaration of condominium (“the declaration”) in the Jefferson Probate Court (“the probate court”). Pursuant to the declaration, the operation and administration of the condominium property would be overseen by Bristol Southside Association, Inc. (“the association”), a nonprofit corporation consisting of all the condominium’s unit owners.
In addition to the residential units, Bristol Southside also consists of a four-level parking garage containing parking spaces for owners of units of the condominium. The condominium also contains storage units for use by owners of the residential units. Pursuant to the declaration, the parking spaces and storage units were designated as limited common elements of the condominium that would be assigned to specific residential units by a subsequent amendment to the declaration.
On June 5, 2007, Bristol Southside, GP, filed the “First Amendment to the Declaration of Bristol Southside” (“the first amendment”) in the probate court. The purpose of the first amendment was to allocate specific parking spaces and storage units to specific residential units as limited common elements appurtenant to those units. Pursuant to the first amendment, parking spaces 115 and 116 and storage unit S3-G were assigned to Unit 302.
On January 7, 2007, Adam Ryan and Brynnen Baker purchased Unit 302 of Bristol Southside; thus, after the first amendment became effective, they became entitled to use parking spaces 115 and 116 and storage unit S3-G. At some point following the filing of the declaration, the Singlas purchased Unit 311 of the condominium. By a quitclaim deed dated Feb *302 ruary 4, 2010, Ryan and Baker purported to convey to Deepali Singla all of their right, title, interest, and claim to parking space 115 and storage unit S3-G.[1] There is no indication in the record that the association approved of or received notification of the purported conveyance. The quitclaim deed was recorded in the probate court on August 8,2011.
On February 16, 2011, Ryan and Baker sold Unit 302 to the Dorsetts and executed a warranty deed to the unit in favor of the Dorsetts. The warranty deed was recorded in the probate court on March 2, 2011. Thereafter,' a dispute arose between the Dorsetts and the Singlas concerning the rights to use parking space 115 and storage unit S3-G.
On September 14, 2013, Ryan, Baker, and the Singlas executed a document titled “Restated Amendment to Declaration of Condominium of Bristol Southside” (“the restated amendment”). The restated amendment stated that the intent of the February 2010 quitclaim deed was to transfer parking space 115 and storage Unit S3-G from Unit 302 to unit 311. The restated amendment provided, in pertinent part, that “the Quitclaim Deed was not styled an Amendment to Declaration, although the owners of all affected Units consented thereto, it was presented to the Bristol Southside Association, Inc., and it was duly recorded in the Probate Office intending'to serve as an amendment....” A handwritten notation by the Singlas’ attorney on the restated amendment indicates that the former registered agent of the association refused to sign the restated amendment because he had resigned as the agent effective February 2013. The restated amendment was recorded in the probate court on October 10, 2013.
On June 27, 2013, the Dorsetts filed a verified complaint for declaratory relief in the trial court against Deepali Singla. The complaint alleged, in pertinent part, as follows:
“20. Because the Limited Common Elements in question were assigned to Unit 302 by the First Amendment, and because they have not been reallocated by a subsequent amendment to the Declaration as required by Section 35-8A-208(b), Alabama Code (1975), the Quitclaim Deed did not effectuate the legal transfer to [Deepali Singla] of Parking Space 115 and Storage Unit S3-G.
[[Image here]]
“22. The Warranty Deed from Ryan and Baker to the [Dorsetts] ... sets forth the name of the condominium, the recording data for the declaration, the county in which the condominium is located, and the identifying number of the unit being conveyed. Accordingly, pursuant to Section 35-8A-204, Alabama Code (1975), as amended, such Warranty Deed conveying Unit 302 also effectuated the legal transfer to the [Dorsetts] of Parking Space 115 and Storage Unit S3-G, as interests appurtenant to that unit which were created by the Declaration, as amended. [The Dorsetts] thus have constructive possession of said Parking Space 115 and Storage Unit S3-G.
“23. On information and belief, [Dee-pali Singla] is either in possession of Parking Space 115 and Storage Unit S3-G, makes a claim for possession of Parking Space 115 and Storage Unit S3-G, or may assert an interest in Parking Space 115 and Storage Unit S3-G. More *303 specifically, [the Dorsetts] believe that [Deepali Singla’s] claim of interest in Parking Space 115 and Storage Unit S3-G is based on the Quitclaim Deed ... and the Scrivener’s Affidavit....”
On December 17, 2013, the trial court granted Deepali Singla’s motion to add her husband, Ish Singla, as an additional party. On November 27, 2013, the Singlas filed an answer and a counterclaim, seeking the entry of a judgment declaring that they were the rightful owners of the parking space and the storage unit, in which they stated, in part:
“5, After selling their interest in Parking Space 115 and Storage Space S3-G, Ryan/Baker (through LAH Real Estate) subsequently marketed Unit 302 for sale, making it clear their unit came with only one parking space and no storage unit. [The Dorsetts] purchased such unit with full knowledge of the prior transfer of Parking Space 115 and Storage Space S3-G. [The Dorsetts’] purchase of Unit 302 did not include Parking Space 115 or any storage unit.
“6. The right' of title and possession of Parking Space 115 and Storage Space S3-G have remained with the Singlas since February 2010.
“7. In October 2013, Bristol Southside Association, Inc. had.no registered agent listed with the Alabama Secretary of State.”
The Dorsetts filed a motion for a summary judgment, which was denied by the trial court. A trial was held on the matter on November 10, 2014. The evidence presented at trial consisted of the live testimony of Deepali Singla and of the Dorsetts and documentary evidence. On December 16, 2014, the trial court entered a judgment declaring that the Singlas were the owners of the parking space and the storage unit. In its judgment, the trial court made the following findings and conclusions:
“4. The First Amendment assigned parking spaces 115 and 116 and storage unit S3-G as ' Limited Common Elements to Unit 302.
“5. On February 4, 2010 Ryan and Baker conveyed to Deepali Singla, the owner of Unit 311 Bristol. Southside Condominium, all of their right, title and interest in.Limited Common Element parking space 115 and storage unit S3-F by quitclaim deed (which was later corrected by Scrivener’s Affidavit to reference storage unit S3-G) in- exchange for $14,000 (the ‘Singla Quitclaim Deed’). The Singla Quitclaim Deed was recorded in the [probate court].
“6. On or about December 1, 2010, Ryan and Baker entered into an agreement ' with LAH Real Estate (agent Christy Fletcher) (the ‘Agent’) to list and sell Unit 302, at which time it was disclosed to the Agent that Unit 302 was to be conveyed with only" 1 parking space, space 116.
“7. On or about. January 25,2011, Ryan and Baker entered into a contract to sell Unit 302 to Cecil ..and Barbara Dorsett, who recognized and acknowledged in writings between the parties that parking space 115 and storage unit S3-G were previously sold,, such that their purchase would only include parking space 116.
“8. On February 16, 2011, Ryan and Baker conveyed all-of their rights title and interest in Unit 302, including parking space 116, to Cecil and Barbara Dor-sett by warranty deed, [which was]-recorded ... in the [probate court]. The Dorsetts’ offer and the sale price accounted for the unit only having one parking space and no storage unit. ■
*304 “9. The Dorsetts’ offer price accounted for the unit only having 1 parking space and no storage unit.
“10. The closing was held in Gadsden, Alabama, and [Ryan and Baker] did not attend in person.

“CONCLUSIONS

“Both parties have asked for a Declaratory Judgment declaring they are the owners of parking space 115 and storage unit S3-G which are Limited Common Elements of the Bristol Southside .Condominium. Because Alabama is a race-notice state, notice may be given by actual notice or by recording in the Office of the Judge of Probate in the county where the property is located. In this instance, the Singlas failed to record the Singlas’ Quitclaim Deed before the Dorsetts’ Deed, but such failure does not render the Singlas’ Quitclaim Deed void because the Dorsetts had actual notice of the prior transfer at the time of their purchase of Unit 302, such that their ownership is subject to such prior transfer. Because the Dorsetts had actual notice of the prior transfer, they are estopped from claiming the Singlas Quitclaim Deed is void.
“It is therefore Ordered as follows: “Deepali and Ish Singla, as the owners of Unit 311, are the owners of parking space 115 and storage unit S3-G which are Limited Common Elements of Bristol Southside, a condominium, said Limited Common Elements having been validly transferred by the prior owners of such Limited Common Elements. Costs are taxed as paid.”
On January 14, 2015, the Dorsetts filed a motion to alter, amend, or vacate the judgment. The trial court denied that motion on January 21, 2015. On March 3, 2015, the Dorsetts filed a notice of appeal to the supreme court. On March 25, 2015, the supreme court deflected the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Setver Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’ ” Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
“ ‘ “However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston[ v. Ames], 514 So.2d [877,] 878 [(Ala.1987)]; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’ Reed v. Board of Trustees *305 for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 676, 677 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (£[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).’”.
“[Farmers Ins. Co. v. Price-Williams Assocs., Inc.,] 873 So.2d [252,] 254-55 [(Ala.Civ.App.2003)] (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).”
Kellis v. Estate of Schnatz, 983 So.2d 408, 412 (Ala.Civ.App.2007).

Discussion

On appeal, the Dorsetts argue (1) that the trial court erred in determining that the quitclaim deed validly transferred any interest in parking space 115 or storage unit S3-G to the Singlas, (2) that the finding that the Dorsetts were estopped from claiming that the quitclaim deed was void is erroneous, and (3) that finding that the Dorsetts were put on notice of the purported transfer of the parking space and storage unit is erroneous.
We first address the Dorsetts’ contention that the quitclaim deed purporting to convey the parking space and storage unit from Ryan and Baker to the Singlas is void under the Act and the declaration because the declaration had not been properly amended. Neither side disputes that Bristol Southside is a condominium governed by the Act; therefore, we turn to the provisions of the Act to determine whether limited common elements of a condominium are subject to being transferred by a deed.
Section 35-8A-201(a), Ala.Code 1975, provides that “[a] condominium may be created pursuant to this chapter only by filing a declaration executed in the same manner as a deed with the judge of probate in every county in which any portion of the condominium is located.” Pursuant to § 35-8A-205(a)(5) and (6), Ala.Code 1975, the declaration of condominium must contain, among other things, “[a] description of the boundaries of each unit” and “[a] description of any limited common elements .... ” Section 35-8A-103 contains definitions of terms that are used in the Act. Section 35-8A-103(26) defines the term “unit” as “[a] physical'portion of the condominium designated for separate ownership or occupancy....” Section 35-8A-103 defines the terms “common elements” as “[a]ll portions of a condominium other than the units” and “limited common element” as “[a] portion of the common elements allocated by the declaration or by operation of Section 35-8A~202(2) or (4) for the exclusive use of one or more but fewer.than all of the units.” § 35-8A-103(4) and (16).
Section 35-8A-208(a), Ala.Code 1975, provides, in part, that “the declaration [of condominium] must specify to which unit or units each limited common element is allocated.” The Commissioner’s Commentary to § 35-8A-208 provides that “[l]ike all other common elements, limited common elements are owned in common by all unit owners. The use of a limited common element, however, is reserved to less than all of the unit owners.”
In Bank of America, N.A. v. Kinslow, 114 So.3d 827, 832 (Ala.Civ.App.2012), this court examined § 35-8A-208. In that case, the owner of a condominium unit had refinanced the original loan used to purchase the unit and had obtained a new loan *306 from Bank of America, N.A., which, in turn, held a mortgage on the unit to secure the loan. Kinslow, 114 So.3d at 829. The deed to the owner’s condominium unit stated that title to the unit was conveyed together with .the rights to a storage closet and a boat slip located on the condominium property. Id. The deed provided that the storage closet and the boat slip were appurtenances to the unit in accordance with the declaration, of condominium. Id. The owner purported to amend the declaration of condominium to transfer .the storage closet and boat slip to another unit .in the condominium, which was owned by Kin-slow. Id. Kinslovv filed an action against the. bank to. quiet title to the storage unit and the boat slip. Id., at 830, “[T]he trial court found that the exclusive use of limited common elements like the boat slip and the storage unit was not an appurtenance to [the unit] such that the right was subject to the mortgage ‘in as much as this right was not set out or described in the mortgage as a right being conveyed to Bank of America.’” Id, On appeal, this court, applying the rules of statutory construction, stated the following with regal'd to § 35-8A-208:
“The rules this court employs in interpreting a statute are well settled: ‘Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.’ Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa Cnty,, 589 So.2d 687, 689 (Ala.1991). ‘[T]he first rule of statutory construction [is] that where the meaning of the plain language of the statute is clear, it must be construed according to its plain language.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). ‘Principles of statutory eon-struction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
“Here, the plain language of § 35-8A-208 makes clear that the limited common elements are appurtenant to a unit in a condominium. Moreover, the first amendment to the [condominium] declaration contemplates that the limited common elements would be appurtenant to a specific unit. The first amendment includes an exhibit that allocates specific carriage ■ houses, storage closets, and boat slips to specific units....
[[Image here]]
“There is no doubt that the plain language of both the Act and the [condominium] declaration provide that a limited common element is appurtenant to a unit. Accordingly, the trial court erred as a matter of law in its determination that the boat slip and the storage closet were not appurtenant to [the unit].”
Id. at 832-33. This court ultimately concluded in Kinslow that the limited common elements assigned to the owner’s unit, including the boat slip and the storage closet, were also subject to the mortgage.
In the present case, the declaration creating Bristol Southside unequivocally provided that the parking spaces and storage units were limited common elements of the condominium. Pursuant to section 2.07. of the declaration, a unit owner had the following rights in the limited common elements assigned to the unit:
“The Limited Common Elements appurtenant to the Unit shall be as described by the Act, as shown on the Plan, and as shown on Exhibit D attached hereto. The description shall be expressed by identifying the type of Limited Common Elements which are appurtenant to the *307 Unit, if any, and the Owners of such Units shall have the exclusive right to use such Limited Common Elements so designated or described unless changed by the Developer as permitted in Section 2.02 hereof or by the unanimous approval of the Owners of the Units to which Limited Common Elements are appurtenant and their respective Mortgagees. Each Owner of a Unit to which the Limited Common Element is appurtenant shall have the right to use the Limited Common Element for all purposes .incident to the use and occupancy of his Unit as herein provided without hindering or encroaching upon the lawful rights of the other Owners, which rights shall be appurtenant to and-run, along with the Units to which the Limited Common Elements are attached.”
The first amendment assigned- parking space 115 and storage unit S3-G to Unit 302; thus, pursuant to the governing documents of the condominium, the parking space and the storage unit were appurtenant to Unit 302, and the owner of that unit had an exclusive right to use them as limited common elements,
The question presented then is whether Ryan and Baker’s purported transfer of the parking space and the storage unit from Unit 302 to Unit 311 was proper under the provisions of the Act and the declaration. Regarding conveyances of the common elements of ,a condominium, § 35-8A-207(e), Ala.Code 1975, provides:
“In a condominium the .common elements are not subject to partition, and any purported conveyance, encumbrance, judicial sale, or other voluntary or involuntary transfer of an undivided interest in the common elements made without the unit to which that interest is allocated, is void.”
Additionally, § 35-8A-208(a) provides, in part, that an allocation of the limited common elements in the declaration “may not be altered without the consent of the unit owners whose units are affected.” Section 35-8A-208(b) provides: ■■
“Excépt as the declaration otherwise provides, a limited common element may be reallocated by an amendment to the declaration executed by the unit owners between or among whose units the reallocation- is made. The persons executing the amendment shall provide it to the association, which-shall record it and the cost shall be borne by the persons, executing the amendment. The amendment-shall-be recorded and indexed in the names of the parties-and the condominium.”
(Emphasis added.) Regarding the transfer of common elements of the condominium, § 35-8A-312(a), Ala.Code 1975, states:
“In a condominium portions of the common elements may be conveyed or subjected to a security interest by the association if persons entitled to cast at least 80 percent of the votes in the association, including 80 percent of the votes allocated to units not owned by a declar-ant, or any larger percentage the declaration specifies, agree to that action; but all the owners of units to which any limited common element is allocated must agree in order to convey that limited common element or subject it to a security interest. The declaration may specify a smaller percentage only if all of the units are restricted exclusively to nonresidential uses. Proceeds of the sale are an asset of the association.”
It is clear from the language of the Act that a limited common element cannot be separated from the unit to which the limited common element has been allocated without a proper amendment to the declaration under the procedures provided in the Act and the declaration of condominium itself.. ....
*308 As noted above, Section 2.07 of the declaration of Bristol Southside allows unit owners of the condominium and their respective mortgagees, with unanimous approval, to alter their exclusive rights to the limited common elements that are appurtenant to their units. Section 2.02 of the declaration, however, provides that an alteration of a unit owner’s right to limited common elements appurtenant to that unit may be accomplished only by amendment to the declaration. Section 2.02 reads, in part,
“that any change which shall result in a change in the undivided interest in Common Elements or Limited Common Elements ... may not be made without an amendment of this Declaration approved by the Owners and Mortgagees in the manner elsewhere required herein.”
Section 11.02 of the declaration provides the procedure by which a unit owner of Bristol Southside may amend the declaration in order to transfer his or her interests in the limited common elements appurtenant to the unit:
“A proposal to amend this Declaration may be considered at any meeting of the members of the Association called for that purpose in accordance with the provisions of the Bylaws; provided that the Association provides prior written notice of such meeting to the Mortgagees as provided in Section 7.01 above. The proposal to amend the Declaration must be approved by the affirmative vote of the members representing not less than sixty-seven percent (67%) of the total allocated votes of the Association and by the affirmative vote of the Mortgagees representing fifty-one percent (51%) of the total allocated votes of the Units subject to Mortgages.”
Section 11.03 of the declaration further provides that “[a] copy of each amendment so adopted shall be certified by the President or a Vice President and Secretary or Assistant Secretary of the Association as having been adopted, and shall be effective when recorded in the Probate Court of Jefferson County, Alabama.”
Ryan, Baker, and the Singlas, as owners of units of Bristol Southside, were subject to the provisions of the Act, the declaration, and the first amendment when purporting to transfer the parking space and storage unit from Unit 302 to Unit 311. In order to effectuate a transfer of those limited common elements from one unit to the other, they not only had to establish their unanimous consent to the transaction, but also were required by § 35-8A-208(b) and by Section 2.02 of the declaration to seek an amendment to the declaration under the procedures established by Sections 11.02 and 11.03 of the declaration. Pursuant to the plain wording of the Act and the declaration, in order for the interest in the parking space and the storage unit to be reallocated from Unit 302 to Unit 311 of Bristol Southside, Ryan, Baker, and the Singlas were required to amend the declaration in the manner specified in the Act and the declaration. Because there was no valid amendment to the declaration, the purported transfer by quitclaim deed was void.
Although Ryan, Baker, and the Singlas attempted to take corrective action in September 2013 by filing the restated amendment in the probate court, there is no indication that the restated amendment complied with the provisions of the declaration concerning amendment of the declaration. The restated amendment was not voted upon by the association, nor was the association provided with notice of the restated amendment as required by the terms of the declaration. Additionally, the restated amendment was executed over three years after the quitclaim deed had *309 been executed and over two years after Ryan and Baker had sold Unit 302 to the Dorsetts. We are not directed to authority from which we could conclude that the restated amendment retroactively validated the purported transfer of the parking space and the storage unit to the Singlas.
The Singlas also contend that the Dor-setts were not good-faith purchasers for value because they purchased Unit 302 with knowledge that the Singlas had possession of the parking space and the storage unit. The Singlas also contend that the Dorsetts are not entitled to the protection provided by § 35-4-90(a), Ala.Code 1975, because the Dorsetts had actual notice of the conveyance of the parking space and the storage unit.[2] The evidence is undisputed that the Dorsetts were made aware of the purported conveyance of the parking space and the storage unit before purchasing the unit, although the Dorsetts testified that title searches and other research they performed before the sale failed to reveal that the parking space and the storage unit had been reallocated, perhaps due to the fact that the quitclaim deed had not been recorded at that time. Even so, as explained in detail above, the quitclaim deed executed by Ryan and Baker did not reallocate the parking space and the storage unit per the express terms of the condominium declaration and the Act. Without first seeking to amend the declaration, Ryan and Baker did not have the authority to convey the parking space and the storage unit. Therefore, under § 35-8A-207(e), the quitclaim deed is null and void. “‘[A] void thing is no thing, and ..., generally, no rights of any sort can be predicated upon that which is no thing.’ ” Robbins v. Bell, 285 Ala. 124, 125, 229 So.2d 511, 513 (1969) (quoting Douglass v. Standard Real Estate Loan Co., 189 Ala. 223, 224, 66 So. 614, 614 (1914)).
Further, the Dorsetts are not es-topped from claiming ownership of the parking space and the storage unit on the basis that they had knowledge that Ryan and Baker had purportedly conveyed their interest in the parking space and the storage unit to the Singlas. In Mazer v. Jackson Insurance Agency, 340 So.2d 770 (Ala.1976), our supreme court discussed the doctrine of equitable estoppel, stating:
“The purpose of [the doctrine of] equitable estoppel ... is to promote equity and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. First National Bank of Opp v. Boles, 231 Ala. 473, 479, 165 So. 586, 592 (1936).
“Equitable estoppel is
“ ‘ . based upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged.” ([Emphasis] supplied [in Boles ].)’
“Id., quoting 21 C.J. § 120 pp. 1117-18.
*310 [[Image here]]
“The basic elements of equitable es-toppel are stated' in Dobbs, Remedies § 2.3 (1973):
“ ‘An estoppel ... has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.’
“A more detailed statement of the elements generally required to support an estoppel is given in 3 Pomeroy, Equity Jurisprudence § 805 (5th ed.1941):
“ ‘... 1. There must be conduct— acts, language, or silence — amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon_5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or [forgo] or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with-it....’”'
340 So.2d at 772-73 (some emphasis omitted).
Regardless of whether estoppel is applicable to' alter or excuse noncompliance with the' terms of the declaration and Act and thereby affect the rights or status of other unit owners, the elements of estoppel are not present in this case. There is no evidence in the record that the Dorsetts misrepresented or concealed a material fact. The Singlas also failed to show that material facts were unknown to them. There is no evidence to support a finding that the Singlas took any action in reliance upon any conduct of the Dorsetts. There is no evidence at all that the Dorsetts ever communicated with the Singlas. Therefore, .the doctrine of estoppel is not available to the Singlas. See Town of Boligee v. Greene Cnty. Water & Sewer Auth., 77 So.3d 1166, 1173 (Ala.2011), and Water Works & Sewer Bd. of City of Wetumpka v. City of Wetumpka, 773 So.2d 466, 470 (Ala.2000).

Conclusion

For the foregoing reasons, vve reverse the judgment and remand the cause to the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, -PJ., and PITTMAN, J., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. Section 35-4-90(a) states:
"All conveyances of real property, deeds, mortgages, deeds of trust, or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees, and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees, or judgment creditors.”